STATE, Respondent, v. TRAILER SERVICE, INC., Appellant.

*No. State 115. Submitted under sec. (Rule) 251.54 October 31, 1973.—Decided December 10, 1973.*
(Also reported in 212 N. W. 2d 683.)

For the appellant the cause was submitted on the brief of *William C. Dineen* of Milwaukee.

For the respondent the cause was submitted on the brief of *Robert W. Warren,* attorney general, and *Albert Harriman,* assistant attorney general.

HALLOWS, C. J. Trailer Service, Inc. (Trailer Service) claims the scale used to weigh its tractor-trailer was not "usable," the procedure used was not "good weighing technique and practice," the evidence insufficient, and the fine imposed unconstitutional and not in accordance with the statute.

On December 23, 1970, Trailer Service was transporting on its tractor-trailer a large crane and was proceeding south on Highway 31 in Kenosha county. The tractor-trailer unit has six axles, three on the tractor and three on the trailer. The trailer was 12 feet 11 inches wide and the tractor-trailer unit's overall length was 77 feet 5 inches. At the junction of Highways 158 and 31, the tractor-trailer was observed by the state traffic officer assigned as a motor vehicle inspector to the state operated motor truck scale just off of Highway I–90 in southern Kenosha county. The state traffic officer stopped the tractor-trailer and ordered the driver to proceed to the

state scale for weighing. This scale was 10 feet wide and 50 feet long—too small to weigh the tractor-trailer as a unit by one weighing. The tractor with its three axles was first weighed and a weight of 85,500 pounds obtained; the trailer part of the unit was then positioned on the scale so that its six wheels (two on each axle) on its right side were on the center section of the scale, and a weight reading of 51,140 pounds was obtained. Then the left side of the trailer was similarly weighed by positioning the six wheels on the left side of the trailer on the center of the scale with the right side wheels resting on the roadway; a weight of 50,380 pounds was obtained. The two weight values of the trailer were then added to the weight of the tractor, making a total of 187,400 pounds.

The driver was issued a citation, charging Trailer Service with violating sec. 348.15 (3) (d), Stats.,[1] for an overload of 114,400 pounds. This overload is the difference between 187,400 pounds, the gross weight of the tractor-trailer and 73,000 pounds, the gross weight permitted by that section. The permit of Trailer Service authorizing 144,500 pounds was disregarded because of its breach.

Not at issue in this case are the charges for violating sec. 348.05, Stats., for an over-width of 4 feet 11 inches, and sec. 348.07, for an over-length of 22 feet 10 inches. These charges were based on the fact Trailer Service's tractor-trailer exceeded the statutorily permitted length

---

[1] "348.15 **Weight limitations on class 'A' highways . . .**

"(3) For enforcement purposes only and in recognition of the possibility of increased weight on a particular wheel or axle or group of axles due to practical operating problems, including but not limited to accumulation of snow, ice, mud or dirt, the use of tire chains or minor shifting of load, no summons or complaint shall be issued, served or enforced under sub. (2) unless:

"(d) The gross weight imposed on the highway by all axles of a vehicle or combination of vehicles exceeds 73,000 pounds."

and width. Although Trailer Service had a special permit authorizing a tractor-trailer unit with a 75-foot length and a 12-foot width, this was disregarded because of a breach thereof.

Any traffic officer who reasonably believes the gross weight [2] of a vehicle is unlawful or exceeds the gross weight for which the vehicle is registered pursuant to a special permit may require the operator of the vehicle to stop and submit the vehicle and its load "to a weighing by means of either portable or stationary scales and may require that such vehicle be driven to the nearest usable certified scale." Sec. 348.19 (1) (a), Stats. While neither the word "usable" or "certified" is defined in the statutes, the gross weight limitation of ch. 348 is measured "by weighing the vehicles and load, either by single draft or multiple draft weighing on scales in good working order which are tested periodically by the department of agriculture or other authorized testing agencies for accuracy to within standard accepted tolerances." Sec. 348.15 (5).[3] Since a weighing may be

---

[2] "Gross weight" is defined by sec. 348.01, Stats., in sub. (2) (a) as "the weight of a vehicle or combination of vehicles equipped for service plus the weight of any load which the vehicle or combination of vehicles may be carrying." Sec. 348.02 (2) provides "The provisions of ch. 348 restricting the size and weight of vehicles apply to the vehicle and any load which it is carrying." Sec. 348.19 (1) (a) provides:

"348.19 **Traffic officers may weigh vehicles and require removal of excess load.** (1) (a) Any traffic officer having reason to believe that the gross weight of a vehicle is unlawful or in excess of the gross weight for which the vehicle is registered may require the operator of such vehicle to stop and submit the vehicle and any load it may be carrying to a weighing by means of either portable or stationary scales and may require that such vehicle be driven to the nearest usable certified scale except as provided in s. 348.19 (1) (b)."

[3] "348.15 **Weight limitations on class 'A' highways** . . .

"(5) For enforcement of weight limitations specified by this chapter the gross weight, measured in pounds, imposed on the

either by single draft or multiple draft weighing, a scale is usable although too small to weigh by single draft. "Usable" also means "in good working order," *i.e.,* in such operating or mechanical condition that it correctly performs the function or utility or the purpose of a scale.

"Certified scale" referred to in sec. 348.19 (1) (a), Stats., also acquires meaning from sec. 348.15 (5), which requires scales "which are tested periodically by the department of agriculture or other authorized testing agencies for accuracy to within standard accepted tolerances." The scale used had been tested by the department of agriculture on September 4, 1970, somewhat less than four months before the weighing and shown to be true and accurate to within standard accepted tolerances. The scales were again tested on January 18, 1971, and found to be accurate. There was no error in the trial court's finding that the scale was usable and certified.

The next question is whether the procedure utilized to weigh the tractor-trailer unit was good weighing tech-

highway by any wheel or any one axle or by any group of 2 or more axles shall be determined by weighing the vehicles and load, either by single draft or multiple draft weighing on scales in good working order which are tested periodically by the department of agriculture or other authorized testing agencies for accuracy to within standard accepted tolerances. The weighing operation shall be performed in accordance with and under conditions accepted as good weighing technique and practice. In multiple draft weighing the sum of the weight of respective components shall be used to establish the weight of a combination of the components. It is recognized that the weight, determined in accordance with methods herein prescribed, includes all statutory tolerances and represents the momentary load force or reaction imposed on the scale at the time of weighing. Such tolerances include any variation due to (a) positioning or tilt of the vehicle on the scale platform and adjacent bearing surface; (b) momentary position of axle centers with respect to wheel bearings and vehicle body; (c) temporary distribution of loading on the wheel or axle; and (d) miscellaneous variable factors of spring flexure, shackle friction, clutch engagement, brake pressure, tire compression and other variable factors."

nique and practice. The method used is multiple draft weighing, which is authorized by sec. 348.15 (5), Stats. But Trailer Service argues the procedure used in this multiple draft weighing was not in conformity with the statute. No question is raised concerning the tractor which was weighed separately as one unit although hitched to the trailer. But Trailer Service argues the axles on the trailer were not weighed but only the wheels on each side of the trailer and that each axle as a component must be weighed as a unit, not the wheels of the three axles on each side separately. Trailer Service claims by weighing the wheels in this manner the weight of the axles is not obtained but only load reactions of individual wheels. This is an argument which should be addressed to the legislature. There is no evidence the method resulted in an error of weight.[4]

Since Trailer Service was charged under sec. 348.15 (3) (d), Stats., which involved a group axle overload, the question is whether the axles on the trailer were weighed. Admittedly, none of the three axles of the trailer were weighed separately but all three were weighed together by weighing the six wheels on the right side and then weighing the six wheels on the left side for the combined weight imposed on the highway by all the axles of the trailer. In multiple draft weighing, as was used here, the sum of the weight of the respective components must be used to establish the weight of the combination of the components. Sec. 348.15 (5). This section recognizes that weight determined by multiple weighing represents the momentary load force or reaction imposed on the scale at the time of weighing. We do not read "components" in

---

[4] In making its argument, Trailer Service relies on a magazine article not in evidence entitled "Truck Weighing" appearing in "Fleet Owner, McGraw-Hill's Magazine of Trucking." This magazine recommends a different method and kind of scale for weighing tractor-trailers as an alternative to single unit weighing.

this section to mean an axle as a unit must be weighed separately. Components include wheels and the combined weights of the 12 wheels on the trailer gave the gross weight of its three axles, which added to the axles' weight of the tractor, gave the gross weight imposed on the highway by the axles of the tractor-trailer. The trial court made no error in its finding that the procedure of weighing followed the statute.

There was no requirement as claimed by Trailer Service for the state to offer evidence that the weighing procedure was accepted as good weighing technique and practice; the statutory authorization was sufficient. The weighing was conducted on a certified scale owned and operated by the state for the specific purpose of weighing motor vehicles. The scale had been recently tested and found to be accurate. The weighing was conducted by a state traffic officer who had been trained and employed to perform this enforcement function. The fact he had never used the method of multiple draft weighing before does not invalidate the method. There is evidence of a subsequent experiment which confirmed the accuracy of the method used.

Trailer Service relies on a statement that in a prosecution for the violation of regulations relating to weight or size or load of motor vehicles, there is no presumption, where the motor vehicle in question has been weighed on state scales, that the scales are accurate and that this statement of no presumption applies to the procedure used to obtain a weight reading. *See* 7 Am. Jur. 2d, *Automobiles and Highway Traffic,* p. 866, sec. 324. We think a method or process for testing which is expressly authorized by statute is entitled to a prima facie presumption of correctness of purpose. In such a case, all that needs to be proved is that the method was followed. *See People v. Fair* (1965), 61 Ill. App. 2d 360, 210 N. E. 2d 593; *Commonwealth v. Thurmond* (1962), 27

Pa. Dist. & County Reports 2d 470. A scientific or medical method not recognized as acceptable in the scientific or medical discipline as accurate does not enjoy the presumption of accuracy, *i.e.*, lie-detector tests. *See* cases cited at Anno. (1952), *Physiological or Psychological Truth and Deception Tests,* 23 A. L. R. 2d 1306, 1308, sec. 2; *State v. Bohner* (1933), 210 Wis. 651, 246 N. W. 314; *LeFevre v. State* (1943), 242 Wis. 416, 8 N. W. 2d 288; *State v. Perlin* (1955), 268 Wis. 529, 68 N. W. 2d 32. But tests by recognized methods need not be proved for reliability in every case of violation. Examples, speedometer, breathalyzer, radar. *See* cases cited at Anno. (1973), *Speeding—Proof—Radar,* 47 A. L. R. 3d 822, 831, sec. 3; *see also:* Anno. (1967), *Intoxication —Tests—Statutes,* 16 A. L. R. 3d 748; 46 A. L. R. 2d 1176; 127 A. L. R. 1513; 7 Am. Jur. 2d, *Automobiles and Highway Traffic,* p. 878, sec. 334. These methods of measurement carry a prima facie presumption of accuracy. Whether the test was properly conducted or the instruments used were in good working order is a matter of defense. The administration of law would be seriously frustrated if the validity of basic and everyday accepted tests had to be a matter of evidence in every case in the first instance. Here, Trailer Service had the duty of going forward with evidence and showing the unreliability of the weighing, either as to method or in its execution. Its lack of proof in this respect cannot be justified on the ground it was the state's duty to affirmatively prove what was a matter of defense. The state's proof met the burden of proof set forth in *Lock v. State* (1966), 31 Wis. 2d 110, 142 N. W. 2d 183.

Because the fine of $8,008 is substantial and no factual issue need be resolved, this court in the interest of justice will consider Trailer Service's claim that the fine is unconstitutionally excessive and not within statutory authorization, although the claim was not raised in the

trial court.[5] The argument based on an excessive fine [6] has no merit. In *State v. Seraphine* (1954), 266 Wis. 118, 62 N. W. 2d 403, the court considered this contention in respect to an overload violation and held the statutory scheme of graduated penalties and the particular fine involved were constitutional. *Also see: State v. Naczas* (1959), 8 Wis. 2d 187, 189, 190, 98 N. W. 2d 444. In justifying a large overload fine, we stated it was justified on the implication of an intent to violate the law for mercenary motive; but this is only one justification. To determine excessiveness of a fine in a constitutional sense, consideration should be given "to the object designed to be accomplished, to the importance and magnitude of the public interest sought to be protected, to the circumstances and the nature of the act for which it is imposed, and in some instances to the ability of the accused to pay." 24B C. J. S., *Criminal Law,* p. 557, sec. 1978 c. For a fine to be unusual or excessive, it must be so disproportionate to the offense as to shock public sentiment and contrary to the judgment of reasonable people concerning what is proper under the circumstances.

It is argued Trailer Service had nothing to gain by the overload because its charge was based on an hourly rate and not on weight. But this is only one factor. The violation was serious. The public interest in the deterioration of its highways by overweighted trucks is great and important. The object of graduated fines is to discourage violations which shorten not only the life of the highways but endanger the safety of the traveling

---

[5] *State v. Morales* (1971), 51 Wis. 2d 650, 187 N. W. 2d 841; *State v. Clarke* (1970), 49 Wis. 2d 161, 181 N. W. 2d 355; *State v. Doyle* (1968), 40 Wis. 2d 461, 162 N. W. 2d 60; *Bradley v. State* (1967), 36 Wis. 2d 345, 153 N. W. 2d 38, 155 N. W. 2d 564.

[6] Art. I, sec. 6, Wisconsin Constitution, provides ". . . nor shall excessive fines be imposed, nor cruel and unusual punishments inflicted."

public. A large overload is avoidable and it is practically impossible to check every truck on the highways for its weight load. To keep the potential threat of enforcement and the desire to obey the law through self-discipline, graduated fines in amounts far exceeding the payload are reasonable means of enforcement; such fines being not only a deterrent to the individual trucker but to the trucking industry generally.

The fine was properly computed according to statutory requirements. Trailer Service claims the fine should have been based only on the overload in excess of the authorized weight of 144,500 pounds in its annual permit rather than the excess over the 73,000 maximum weight limitation authorized by sec. 348.15 (3) (d), Stats., under which Trailer Service was charged. But sec. 348.25 expressly provides "Any person who violates a condition of a permit under which he is operating is subject to the same penalties as would be applicable if he were operating without a permit." [7] There is no exception made for special permits such as Trailer Service had and therefore its overload is based upon the authorized limitation of 73,000 pounds gross weight. What this section of the statute does is to nullify the authorization of a higher weight load in the event of a breach of a condition of a permit. *See* Anno. (1972), *Motor Vehicles—Weight Restrictions*, 45 A. L. R. 3d 503, 554, sec. 27. This enforcement technique is reasonable and the trucker cannot complain because he is penalized for the mile he took when he was given a foot.

---

[7] "348.25 **General provisions relating to permits for vehicles and loads of excessive size and weight** . . .

"(2) Vehicles or articles transported under permit are exempt from the restrictions and limitations imposed by this chapter on size, weight and load to the extent stated in the permit. Any person who violates a condition of a permit under which he is operating is subject to the same penalties as would be applicable if he were operating without a permit."

There is no merit in the claim of Trailer Service that the weight was not accurate because a wind was blowing during the weighing or the scales were slightly lower than the surrounding platform. Variable factors occurring or likely to occur in weighing are considered and accounted for in the statutory tolerances and in the gross weight taken in accordance with the methods prescribed in the statutes. Sec. 348.15 (5), Stats.

*By the Court.*—Judgment affirmed.