CITY OF NEW BERLIN, Plaintiff-Respondent,

v.

Alfred L. WERTZ, Defendant-Appellant.†

Court of Appeals

*No. 81–578. Submitted on briefs September 28, 1981.— Decided December 22, 1981.*
(Also reported in 314 N.W.2d 911.)

---

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Stephen J. Hajduch* of Milwaukee.

For the plaintiff-respondent the cause was submitted on the brief of *Daniel Kile* of *Schober & Radtke* of New Berlin.

By order of the court a brief was submitted by *Bronson C. La Follette,* attorney general, and *Kirbie Knutson,* assistant attorney general.

Before Voss, P.J., Brown and Scott, JJ.

SCOTT, J. The issue in this case is whether the prosecutor was required to prove compliance with certain administrative code procedures as foundation for the introduction into evidence of the results of a breathalyzer test. The trial court held that compliance with all administrative code procedures was not required for test results to be admitted, and we affirm.

This case came to this court as a one-judge appeal from a conviction for violation of an ordinance. This court was aware that the issue raised on appeal has been raised repeatedly in various trial courts throughout the state, and, therefore, it was determined that the case warranted a decision by a three-judge panel and a recommendation for publication of the opinion.[1] An order that the appeal be heard by a three-judge panel was entered pursuant to sec. 809.41(3), Stats.

Alfred Wertz was involved in an automobile accident on November 11, 1979 in New Berlin, Wisconsin. The investigating police officer observed that there was an odor of intoxicants on Wertz' breath, that Wertz slurred

---

[1] Because the court was considering publication of the decision and thereby establishing a precedent for trial courts to follow in criminal as well as ordinance violation cases, the Attorney General was requested to file a brief.

his speech and that Wertz swayed when he walked. He arrested Wertz and issued a citation to him for violation of a City of New Berlin ordinance adopting sec. 346.63 (1), Stats., driving while under the influence of an intoxicant. At the police station, Wertz was requested to take a breathalyzer test. Wertz consented, and the test was administered. The test results showed .18% alcohol in his blood by weight. Wertz entered a not guilty plea and demanded a trial by jury. Counsel for Wertz made no demand for discovery pursuant to sec. 345.421, Stats.

The case was tried to a jury on March 9, 1981. Just prior to trial, Wertz moved to suppress the breathalyzer test results on the grounds that the testing procedures and methods did not meet certain administrative code requirements.[2] The trial court held that the City is not required to prove strict compliance with all of the administrative code procedures and admitted the test results. However, the court required certain foundation evidence as to the accuracy of the test prior to the admission of the test results. Wertz was found guilty of operating a motor vehicle while under the influence of an intoxicant, and judgment was entered.

On appeal, Wertz contends that the trial court committed error by not requiring proof of compliance with certain sections of the administrative code as a founda-

---

[2] Wertz first contends that Wisconsin Administrative Code MVD 25.05(3)(a) requires the City to prove the continuous observation of the subject of the breathalyzer test for a minimum of twenty minutes prior to the collection of the breath specimen. He argues on appeal that there is insufficient proof of continuous observation in the record. Secondly, Wertz contends that there is insufficient proof in the record to demonstrate that the assay report of the manufacturer complied with the requirements of sec. 25.09(3). Because we hold that the proponent of a breathalyzer test need not prove compliance with the administrative code, it is unnecessary to examine the record in this regard. These two sections have been revised and renumbered to Trans. 311.05 (3)(a) and 311.09(3), respectively.

tional prerequisite to the admission of the results of the breathalyzer test. Our examination of the relevant statutes and cases convinces us that Wertz' contention is not correct.

By statute, a law enforcement officer who arrests a person and issues a citation for driving while under the influence of an intoxicant may request the driver to provide a breath, blood or urine sample for testing. Sec. 343.305(2)(b), Stats. The results of the tests are admissible into evidence at a trial on the charge of operating a motor vehicle while under the influence. Section 343.305(7), Stats., reads as follows:

> At the trial of any civil or criminal action or proceeding arising out of the acts committed by a person alleged to have been driving or operating a motor vehicle while under the influence of an intoxicant or a controlled substance, the results of a test administered under sub. (2) (b) or (c) or (5) are admissible on the issue of whether the person was under the influence of an intoxicant or a controlled substance. Test results shall be given the effect required under s. 885.235 and, if applicable, s. 346.63(4).[3]

Section 343.305(7), Stats., places no conditions on the admissibility of the results of a breathalyzer test.[4]

---

[3] Section 343.305(7), Stats., as amended in sec. 1568n, ch. 20, Laws of 1981, provides in part: "Test results shall be given the effect required under s. 885.235, except as provided in ss. 346.63(1) and (2), 940.09 and 940.25."

[4] We note that sec. 343.305(10)(a), Stats., which pertains to chemical analysis of blood or urine samples contains language which is significantly different from the language in sec. 343.305 (10)(b), Stats., pertaining to breathalyzer tests. This section clearly states that a blood or urine test is not valid unless it is performed in an approved laboratory by a person with a valid permit issued by the Department of Health and Social Services. This section further requires substantial compliance with methods approved by the laboratory of hygiene in performing the tests.

In contrast to subsection (a), subsection (b) does not itemize conditions which must be met before a breath test may "be considered valid under this section." Such different legislative treat-

Under Wisconsin case law, breathalyzer tests carry a "prima facie presumption of accuracy," and the question of how accurately the test was performed goes to the weight to be given to the test, not to its admissibility.

[T]ests by recognized methods need not be proved for reliability in every case of violation. Examples, speedometer, breathalyzer, radar. [Citations omitted.] These methods of measurement carry a prima facie presumption of accuracy. Whether the test was properly conducted or the instruments used were in good working order is a matter of defense. The administration of law would be seriously frustrated if validity of basic and everyday accepted tests had to be a matter of evidence in every case in the first instance.

*State v. Trailer Service, Inc.,* 61 Wis. 2d 400, 408, 212 N.W.2d 683, 688–89 (1973).

In a recent decision, this court relied on the holding of *Trailer Service* to conclude that a "prima facie presumption of accuracy applied" to stationary radar and that "the state is not required to affirmatively prove accuracy and reliability" of stationary radar units. *City of Wauwatosa v. Collett,* 99 Wis. 2d 522, 524, 299 N.W.2d 620, 621 (Ct. App. 1980). We conclude that under *Trailer Service* breathalyzer tests are entitled to that same "presumption of accuracy." The State is not required to affirmatively prove compliance with administrative code procedures as a foundation for the admission of a breathalyzer test.

Our holding should not be construed as a limitation on the power of the trial court to exercise control over the receipt of evidence under sec. 906.11(1), Stats.[5] Courts

---

ment indicates an intent not to place similar restrictions on the admission of breathalyzer tests.

[5] Section 906.11(1), Stats., provides:

Mode and order of interrogation and presentation. (1) CONTROL BY JUDGE. The judge shall exercise reasonable control

may be faced with factual situations where there are no legislatively imposed foundational prerequisites but where the court properly refuses to admit the test.[6] A situation may arise where the party objecting to the admissibility of the breathalyzer test convinces the court that the accuracy of the test is so questionable that its results are not probative and, therefore, not admissible as relevant evidence under sec. 904.01, Stats. Or the court may, in some cases, conclude that accuracy of the test is so questionable that its probative value is outweighed by its prejudicial effect. Sec. 904.03, Stats. The latter may be especially important in light of the presumptions contained in sec. 885.235, Stats.,[7] and the recent amendments to sec. 346.63, Stats.[8]

over the mode and order of interrogating witnesses and presenting evidence so as to (a) make the interrogation and presentation effective for the ascertainment of the truth, (b) avoid needless consumption of time, and (c) protect witnesses from harassment or undue embarrassment.

[6] Challenges to the admissibility of the test on grounds of its very questionable accuracy may arise before trial by motion to suppress or during trial after cross-examination has raised the issue and there is a motion to strike the evidence or, in some cases, the challenge may arise when the court in its discretion has allowed the opposing party to voir dire a witness before receiving the test results into evidence. Regardless of how the challenge is raised, the court must give careful consideration to the prima facie presumption of accuracy accorded the test by legislative enactment and case law in ruling on the test's admissibility. The court must also keep in mind that *generally* an attack on the qualifications of the operator, the methods of operation or the accuracy of the equipment is a matter of defense and goes to the weight to be accorded to the test and not to the test's admissibility.

[7] Section 885.235, Stats. (1979), as amended by ss. 1816c, d, e, and f, ch. 20, Laws of 1981, effective May 1, 1982, provides certain exceptions for offenses specified in secs. 346.63(1) and (2), 940.09(1) and 940.25(1), Stats.

[8] Section 346.63, Stats. (1979), prohibited persons from driving or operating a motor vehicle while under the influence of an in-

The trial courts may also refuse to admit breathalyzer test results unless the requirement of relevancy under sec. 904.01, Stats., and the requirement of authentication under sec. 909.01, Stats., have been met. The question of authenticity is preliminary to the question of admissibility. Authenticity is a condition precedent to admissibility and is satisfied by the proponent of evidence showing sufficient proof to the court to support a finding by the court "that the matter in question is what its proponent claims." Sec. 909.01, Stats. Once the court is satisfied that, in fact, a breathalyzer test was run on a sample of the defendant's breath, the requirement of authenticity has been satisfied.

In ruling on admissibility of breathalyzer test results, trial courts must also consider whether there has been compliance with the time limitation and/or the requirement of expert testimony under sec. 885.235(1), Stats.[9]

In the instant case, Wertz does not challenge the authenticity or relevancy of the breathalyzer test, nor does he raise any issue as to compliance with the time limitation of sec. 885.235, Stats. Our examination of the record reveals an abundance of evidence demonstrating the probable accuracy of the breathalyzer test.[10] The prima

---

toxicant or a controlled substance. That section was repealed and recreated by sec. 1598t, ch. 20, Laws of 1981, effective May 1, 1982, and it now prohibits persons from driving or operating a motor vehicle when the person has a blood alcohol concentration of 0.1 grams or more of alcohol in 210 liters of the person's breath.

[9] Section 885.235(1) and (3), Stats., was amended by ss. 1816c and e, ch. 20, Laws of 1981, effective May 1, 1982. This amendment changed the two-hour time limitation to three hours.

[10] The City offered evidence that the operator of the breathalyzer was certified as an operator and that he was experienced in operating the machine. There was also evidence that the machine had been properly tested before and after the test and that the breathalyzer operator had carefully followed the recommended procedures for operation of the machine. There was

facie presumption of accuracy of the test was not overcome. Therefore, Wertz' claimed noncompliance with certain provisions of the code goes only to the weight, not to the admissibility, of the breathalyzer test. The trial court allowed Wertz a complete and detailed cross-examination of all witnesses, including the breathalyzer operator. Counsel for Wertz produced testimony on the alleged lack of continual or constant observation of Wertz and the alleged insufficiency of certain certificates regarding the test ampoules. The jury was afforded the opportunity to weigh any of the alleged failures to conform with the various Motor Vehicle Department standards and procedures in determining the weight the jury would accord the breathalyzer test results.

Wertz' final argument is that he is entitled to a new trial in the interests of justice. The thrust of his final argument is that the failure of the trial court to suppress the breathalyzer test resulted in prejudicial error. Having concluded that the breathalyzer test was properly received into evidence, we find no merit in Wertz' position.

*By the Court.*—Judgment affirmed.

evidence which demonstrated, at the very least, substantial compliance with ch. 25 of the Motor Vehicle Code (now Trans. 311), if not actual compliance with the relevant sections dealing with breathalyzer tests and standards.