STATE of Wisconsin, Plaintiff-Respondent,

v.

Howard M. FRANKENTHAL, Defendant-Appellant.†

Court of Appeals

*No. 82–1284. Submitted on briefs April 21, 1983.—*
*Decided May 25, 1983.*
(Also reported in 335 N.W.2d 890.)

For the defendant-appellant the cause was submitted on the brief of *Douglas Lenicheck* of *Levy & Levy, S.C.* of Cedarburg.

For the plaintiff-respondent the cause was submitted on the brief of *Jeananne L. Danner,* assistant district attorney of Port Washington.

Before Scott, C.J., Voss, P.J., and Brown, J.

VOSS, P.J.  Howard Frankenthal appeals from his conviction for speeding.  The sole issue raised on appeal

† Petition to review denied.

is whether the state presented sufficient foundation evidence for the admissibility of a VASCAR speed reading. After reviewing the record, we conclude that there is ample evidence to support Frankenthal's conviction. Accordingly, the decision of the trial court is affirmed.

On February 13, 1982, Howard Frankenthal was issued a speeding citation in Ozaukee county by the Wisconsin State Patrol. The citation showed that he had been traveling seventy-six miles per hour in a fifty-five mile per hour zone. The citation was based on a clocking made by Trooper Timothy Stricker, the arresting officer, using a VASCAR II computer-recorder.

Frankenthal entered a plea of not guilty, and a jury trial was scheduled. The jury trial was held on July 26, 1982. At the trial, a hearing on a motion *in limine* was held; this motion sought to prohibit the introduction of evidence of speed based on a VASCAR reading, without expert testimony being presented as to the accuracy, reliability and scientific principles on which the unit was based. The motion *in limine* was denied by the trial court.

At trial, Trooper Stricker testified that he had been a state trooper for fifteen years and that he had received his first training in the operation of the VASCAR unit in 1971. In addition, Trooper Stricker stated that he had operated the VASCAR unit for eleven years and that during this period of time, he had attended several refresher courses concerning the operation of VASCAR units.

Trooper Stricker next testified as to his operation of the unit. His testimony was that he had tested the VAS-CAR unit for accuracy at both 8:10 a.m. and 4:29 p.m. on the date that Frankenthal was issued the citation. This testing was done in accordance with the manufacturer's recommendations, using a certified stopwatch at a distance premeasured by a certified steel tape. Trooper Stricker also indicated that he had tested the VASCAR unit against a certified speedometer on several occasions

on February 13, 1982. All of these tests, completed on February 13, 1982, indicated that the VASCAR unit was operating correctly.

There is no evidence of any qualified expert testifying to establish the scientific reliability and accuracy of the VASCAR unit. At the close of the state's case, the defense moved to dismiss based upon this fact. The trial court denied this motion to dismiss, and Frankenthal was subsequently found guilty of a speeding violation.

It is Frankenthal's contention that the state did not present sufficient foundation evidence for the admissibility of the VASCAR speed reading. He specifically contests the state's use of the VASCAR unit to establish his speed because he claims that the scientific reliability of VASCAR devices has not yet been decided by Wisconsin courts. We disagree.

VASCAR is an acronym standing for "Visual Average Speed Computer and Recorder." The principle underlying VASCAR is the use of the formula: speed equals distance/time. When the vehicle to be timed enters the target area, the VASCAR operator switches on the timing device. When the timed vehicle completes the measured distance, the VASCAR operator switches off the timer. The VASCAR unit then functions as a calculator and automatically divides the time into the distance and arrives at the speed at which the vehicle was traveling.[1]

The VASCAR is not a new or novel instrument. The record indicates that VASCAR units have been used in

---

[1] We wish to point out that while the VASCAR unit automatically calculates the speed of a vehicle, this calculation can be done manually. A person need only divide the distance by the time taken to travel that distance in order to arrive at the speed the vehicle was traveling. Once the distance and time are known, this computation can be performed with just an ordinary calculator or even by elementary long division by hand. Obviously, the VASCAR unit is simply a modern, scientific invention used to speed up and simplify a task which a person of average intelligence could perform himself.

the state of Wisconsin for at least eleven years by the State Patrol. Trooper Stricker testified that he, alone, bases approximately forty citations per month on his VASCAR unit clockings. Thus, it can be seen that VASCAR units have been used extensively for a number of years.

In *State v. Trailer Service, Inc.*, 61 Wis. 2d 400, 408, 212 N.W.2d 683, 688–89 (1973), our supreme court stated:

A scientific or medical method not recognized as acceptable in the scientific or medical discipline as accurate does not enjoy the presumption of accuracy, *i.e.*, lie-detector tests. . . . But tests by recognized methods need not be proved for reliability in every case of violation. Examples, speedometer, breathalyzer, radar. . . . These methods of measurement carry a prima facie presumption of accuracy. Whether the test was properly conducted or the instruments used were in good working order is a matter of defense. The administration of law would be seriously frustrated if the validity of basic and everyday accepted tests had to be a matter of evidence in every case in the first instance. [Citations omitted.]

This court relied on *Trailer Service* when it held that a prima facie presumption of accuracy applies to stationary radar, *City of Wauwatosa v. Collett*, 99 Wis. 2d 522, 524, 299 N.W.2d 620, 621 (Ct. App. 1980), and to the statutory admissibility of breathalyzer tests, *City of New Berlin v. Wertz*, 105 Wis. 2d 670, 674, 314 N.W.2d 911, 913 (Ct. App 1981). In *Collett*, the court also stated: "[W]hether a stationary radar device was inaccurate or unreliable is a matter of defense. The state is not required to affirmatively prove accuracy and reliability." 99 Wis. 2d at 524, 299 N.W.2d at 621. Thus, in accordance with these cases, we hold that a prima facie presumption of accuracy arises in the present case. Furthermore, any contentions which the appellant raises con-

cerning reliability only go to the weight of the evidence, as a matter of defense. Accordingly, we affirm the trial court's decision.

*By the Court.*—Judgment affirmed.