STATE of Wisconsin, Plaintiff-Respondent,

v.

William G. DWINELL, Defendant-Appellant.†
[Case No. 83–1257.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

Edward MILES, Defendant-Appellant.
[Case No. 83–1922–CR.]

Court of Appeals

*Nos. 83–1257, 83–1922–CR. Submitted on briefs February 21, 1984.*
*—Decided May 9, 1984.*
(Also reported in 349 N.W.2d 739.)

† Petition to review denied.

For the defendant-appellant, the cause was submitted on the briefs of *Richard C. Kelly,* of *Mealy & Kelly,* of Whitewater. [Case No. 83–1257.]

For the plaintiff-respondent, the cause was submitted on the brief of *Richard L. Voss,* assistant district attorney, of Elkhorn, and *Bronson C. La Follette,* attorney general, and *Jerome S. Schmidt,* assistant attorney general. [Case No. 83–1257.]

For the defendant-appellant, the cause was submitted on the briefs of *Steven D. Phillips,* assistant state public defender. [Case No. 83–1922–CR.]

For the plaintiff-respondent, the cause was submitted on the brief of *Richard L. Voss,* assistant district attorney, of Elkhorn. [Case No. 83–1922–CR.]

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

NETTESHEIM, J.  Both defendants appeal from judgments of conviction contrary to sec. 346.63(1), Stats.[1]

[1] Pursuant to Rules 809.10(3) and 809.41(3), Stats., we consolidated these cases and placed them before a three-judge panel.

The main issue on appeal is whether the trial court erred in admitting breath test results of the Intoximeter 3000 without requiring the prosecution to first demonstrate the reliability of the device. Because the Department of Transportation's approval of the Intoximeter 3000 as a quantitative breath alcohol instrument[2] entitles it to a prima facie presumption of accuracy, and because we also conclude that sec. 346.63(1)(b) is not unconstitutionally vague, we affirm.

On May 30, 1982, Edward Miles was stopped by a Village of Sharon patrolman and issued a citation for operating a motor vehicle while under the influence of an intoxicant contrary to sec. 346.63(1)(a), Stats. Subsequently, he was taken to the Walworth county sheriff's department where he submitted to a breath test. The test was administered by a Walworth county deputy sheriff on an Intoximeter 3000. The test indicated Miles' blood alcohol concentration to be .248%. Although this amount exceeds the legal amount set forth in sec. 346.63(1)(*b*), the State only charged Miles with a violation of 346.63(1)(*a*), operating a motor vehicle while intoxicated.

Prior to trial, Miles brought a motion *in limine* to prohibit the State from using the results of the Intoximeter 3000 test as evidence. Miles alleged that the machine's results were not a reliable and accurate indicator of his blood alcohol concentration. After lengthy hearings, the trial court ruled the Intoximeter 3000 results were entitled to a prima facie presumption of accuracy and therefore admissible into evidence without qualified testimony as to the machine's scientific reliability. Following a jury trial, Miles was convicted of operating a motor vehicle while intoxicated.

On May 8, 1982, William G. Dwinell was arrested by a Village of Darien patrolman. He was transported to the Walworth county sheriff's department where he submit-

---

[2] *See* Wis. Adm. Code, sec. Trans 311.04(7).

ted to a breath test administered on an Intoximeter 3000. The results ranged from .121% to .133% blood alcohol concentration. Dwinell was then charged with operating a vehicle with a blood alcohol concentration in excess of .10% contrary to sec. 346.63 (1) (b), Stats.

Dwinell moved for suppression of the test results of the Intoximeter 3000. The trial court denied the request determining that the State did not have to prove the scientific reliability of the testing device. On May 11, 1983, Dwinell was found guilty of operating a motor vehicle with a blood alcohol concentration of .10% or more.

On appeal, Dwinell and Miles contend the trial court's determination to admit the Intoximeter 3000 breath test results was error. They allege the Intoximeter 3000 is an unreliable and inaccurate measuring device and should not have been given a prima facie presumption of accuracy by the trial court without a prior showing of its reliability or the scientific principles which it utilizes. The State argues that such a showing is not required because the Intoximeter 3000 has been approved by the Department of Transportation pursuant to Wis. Adm. Code, sec. Trans 311.04 (7). We agree with the State.

Section 343.305 (1), Stats., the implied consent statute, states in part:

Any person who drives or operates a motor vehicle upon the public highways of this state . . . shall be deemed to have given consent to one or more tests of his or her *breath,* blood or urine, for the purpose of determining the presence or quantity in his or her blood or *breath,* of alcohol . . . . [Emphasis added.]

Our supreme court, when addressing the general "breath test" language in the implied consent statute, has held that chemical tests specified by the statute are reliable as a matter of law. *In Matter of Suspension of Operating Privilege of Bardwell,* 83 Wis. 2d 891, 900, 266 N.W.2d

618, 622 (1978). The court in *Bardwell* based its conclusion on *State v. Trailer Service, Inc.*, 61 Wis. 2d 400, 408, 212 N.W.2d 683, 688 (1973), where the court held that "tests by recognized methods need not be proved for reliability in every case of violation." Under Wisconsin case law, breathalyzer tests carry a prima facie presumption of accuracy, and the question of how accurately the test was performed goes to the weight to be given to the test, not to its admissibility. *City of New Berlin v. Wertz*, 105 Wis. 2d 670, 674, 314 N.W.2d 911, 913 (Ct. App. 1981).

However, the defendants in these cases argue that the Intoximeter 3000 is not a reliable and recognized method for testing the breath. We do not agree.

By sec. 343.305 (10) (b), Stats., the legislature has expressly conferred the authority for approval of breath testing equipment on the Department of Transportation. The statute reads in part, "[t]he department of transportation shall approve techniques or methods of performing chemical analysis of the breath . . . ." Pursuant to this statute, the Department of Transportation enacted Wis. Adm. Code, Ch. Trans 311. In subsection 4 of this chapter, the Department sets forth standards that a quantitative breath analyzing instrument must meet prior to its approval as a testing device. The requisite standards to be met include performance standards established by the U.S. Department of Transportation, National Highway Traffic Safety Administration, and evaluation and approval by the Department of Transportation's program director. Sec. Trans 311.04 (2) and (1). Section Trans 311.04 (7) lists the Intoximeter 3000 as one of four quantitative breath alcohol test instruments that have met the above requirements and have been approved by the Department of Transportation for use in Wisconsin.

Courts often advert to the expertness, special competence, specialized knowledge, or experience of the administrative agency which fortifies the judgment of the agency, or to the broad powers, scope of discretion, or policy-making authority which the legislature has reposed in the agency, as a factor limiting judicial review of agency action.

2 Am. Jur. 2d *Administrative Law* § 633 (1962). Because the Department of Transportation has approved the Intoximeter 3000 as an acceptable device for quantitatively analyzing a driver's breath, we will not overturn the trial court's determination allowing the results of the test into evidence. The expertise of the Department as to the wisdom of its rules and regulations should be respected by this court in this case. The Intoximeter 3000 has met the requirements established by the Department and, therefore, is accorded the presumption of accuracy given to the other breath-testing devices listed in the Wisconsin Administrative Code. This presumption allows the results of breath tests obtained by the Intoximeter 3000 to be allowed into evidence without testimony regarding the machine's scientific accuracy and reliability.[3] *See Trailer Service,* 61 Wis. 2d at 407–08, 212 N.W.2d at 688–89; sec. 885.235 (1) (c), Stats.

While according Intoximeter 3000 tests the prima facie presumption of accuracy accorded breathalyzer tests in general, we note the caveat expressed by the court of appeals in *Wertz:*

Our holding should not be construed as a limitation on the power of the trial court to exercise control over the receipt of evidence under sec. 906.11(1), Stats. Courts may be faced with factual situations where there are no legislatively imposed foundational prerequisites but

---

[3] Although the trial court held extensive pretrial evidentiary hearings on the scientific accuracy and reliability of the Intoximeter 3000, our holding in this case makes such hearings unnecessary.

where the court properly refuses to admit the test. A situation may arise where the party objecting to the admissibility of the breathalyzer test convinces the court that the accuracy of the test is so questionable that its results are not probative and, therefore, not admissible as relevant evidence under sec. 904.01, Stats. Or the court may, in some cases, conclude that accuracy of the test is so questionable that its probative value is outweighed by its prejudicial effect. Sec. 904.03, Stats. The latter may be especially important in light of the presumptions contained in sec. 885.235, Stats., and the recent amendments to sec. 346.63, Stats.

*Wertz,* 105 Wis. 2d at 674–75, 314 N.W.2d at 913 (footnotes omitted).

Dwinell further contends that sec. 346.63(1)(b), Stats., is unconstitutionally vague by failing to give adequate notice of the conduct it proscribes. The resolution of this issue is governed by the recent case of *State v. Muehlenberg,* No. 83–1598, slip op. (Ct. App. Mar. 27, 1984),[4] which held the statute was not unconstitutionally vague.

*By the Court.*—Judgments and orders affirmed.

---

[4] *State v. Muehlenberg* was ordered published on May 3, 1984.