STATE of Wisconsin, Plaintiff-Appellant,†

v.

Jacob J. FAUST, Defendant-Respondent.

Court of Appeals

*No. 03–0952–CR. Submitted on briefs June 16, 2003.—*
*Decided October 1, 2003.*

2003 WI App 243

(Also reported in 672 N.W.2d 97.)

† Petition to review granted 12-16-03.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *Mary T. Wagner*, assistant district attorney.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Stephen M. Seymour* of Sheboygan.

Before Anderson, P.J., Brown and Nettesheim, JJ.

¶ 1. BROWN, J. The question here is whether exigent circumstances still exist for a nonconsensual and warrantless blood draw even after the State has already obtained a voluntary chemical breath test producing a valid sample. In *State v. Krajewski*, 2002 WI 97, ¶ 1, 255 Wis. 2d 98, 648 N.W.2d 385, *cert. denied*, 537 U.S. 1089 (2002), our supreme court undertook the

task of determining the parameters by which law enforcement could conduct a warrantless and nonconsensual blood draw in the context of an arrest for operating a motor vehicle while intoxicated pursuant to the exigent circumstances exception to the Fourth Amendment. Our supreme court instructed that "[t]he exigency that exists because of dissipating alcohol does not disappear until a satisfactory, useable chemical test has been taken." *Id.*, ¶ 40. We are bound by this statement. Accordingly, we hold that once an individual arrested on probable cause for OWI has provided a satisfactory and useable chemical test, the exigent circumstances justifying a warrantless and nonconsensual blood draw no longer exist. We therefore affirm the circuit court's order granting Jacob J. Faust's motion to suppress the results of the blood test.

¶ 2. The facts are undisputed. On February 19, 2002, Sheboygan police officer James Olsen conducted a traffic stop in the city of Sheboygan. Prior to the stop, Olsen had observed that the license plate displayed on the car Faust was driving was registered to a 1988 Chevrolet Coupe, but was in fact attached to an Audi Coupe. Upon pulling the vehicle over and identifying the driver of the vehicle as Faust, Olsen noted a strong odor of intoxicants emanating from the vehicle and that Faust's speech was slurred and his eyes bloodshot and glassy. Olsen asked Faust how much he had to drink before driving and Faust admitted to downing "five brandies." After Faust failed field sobriety tests, Olsen administered a preliminary breath test which returned a result of a .13 g/100 ml blood alcohol content.

¶ 3. Olsen then transported Faust to the Sheboygan police department, where he agreed to provide a sample of his breath for chemical analysis. The breath test reflected a blood alcohol content of .09 grams of

alcohol per 210 liters of breath, which is .01 above the prohibited alcohol concentration (.08) pertinent to Faust as a third offender pursuant to WIS. STAT. § 885.235(1g)(cd) (2001–02).[1] Although Olsen was aware that Faust was therefore operating with a prohibited blood alcohol level given his two prior convictions, he advised Faust that he would seek a blood test as well. Olsen then read Faust an Informing the Accused form. Faust refused to consent to the blood test, and a forced blood sample was subsequently drawn from him at the hospital. The blood sample ultimately reflected a blood alcohol level of .10 g/100 ml of blood.

¶ 4. On October 16, 2002, Faust filed a motion to suppress the blood test results, arguing that since the breath test had already established that his blood alcohol exceeded the prohibited legal limit, there was no longer any exigency justifying a blood draw without a warrant. At the first motion hearing, Faust conceded that for the purposes of the hearing he was not challenging that the officer had probable cause to stop or arrest him. After a second motion hearing, the circuit court granted Faust's motion to suppress the blood test results, reasoning that "exigent circumstances did not exist to justify the warrantless taking of Faust's blood and . . . the blood test was taken outside of statutory parameters." This appeal followed.

██

¶ 5. For purposes of this appeal, there are no genuine issues of material fact. We are presented with the question of whether a forced blood draw meets the exigent circumstances exception to the warrant requirement of the Fourth Amendment to the United

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

States Constitution and article I, section 11 of the Wisconsin Constitution when a valid breath test has already been taken. This is a question of law that we review de novo. *State v. Bohling*, 173 Wis. 2d 529, 533, 494 N.W.2d 399 (1993).

¶ 6. As we stated at the outset, our holding in this case is based upon *Krajewski*. Nonetheless, to better understand how the analysis conducted in *Krajewski* controls the outcome in this case, we will, as did the court in *Krajewski*, provide some background about the exigency exception to the warrant requirement of the Fourth Amendment and its relationship to Wisconsin's implied consent statute.

¶ 7. Both the Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution establish the right of persons to be secure from unreasonable searches. Consequently, this court interprets the two constitutional provisions in concert. *Krajewski*, 255 Wis. 2d 98, ¶ 18 n.9. Searches conducted without a warrant are deemed per se unreasonable unless they fall within one of "a few specifically established and well delineated exceptions." *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971); *see also State v. Murdock*, 155 Wis. 2d 217, 227, 455 N.W.2d 618 (1990). Two of the carefully delineated exceptions to the warrant requirement are consent searches and searches based on exigent circumstances. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Schmerber v. California*, 384 U.S. 757, 770–71 (1966). A well-recognized exigent circumstance is the threat that evidence will be lost or destroyed if time is taken to obtain a warrant. *Bohling*, 173 Wis. 2d at 537–38.

¶ 8. A warrantless blood draw from a person arrested for driving while intoxicated is permissible under the exigent circumstances exception to the Fourth Amendment's warrant requirement. *Schmerber*, 384 U.S. at 771–72. The exigency upon which a warrantless blood draw is premised is the dissipation of alcohol in the bloodstream. *Krajewski*, 255 Wis. 2d 98, ¶ 37. In order for the dissipation of alcohol from an individual's bloodstream to constitute sufficient exigency: (1) the blood draw must be taken to obtain evidence of intoxication from a person lawfully arrested for a drunk-driving related violation or crime; (2) there must be a clear indication that the blood draw will produce evidence of intoxication; (3) the method used to take the blood sample must be a reasonable one and performed in a reasonable manner; and (4) the arrestee must present no reasonable objection to the blood draw. *Bohling*, 173 Wis. 2d at 534.

¶ 9. Wisconsin has enacted an implied consent statute for motor vehicle operators, WIS. STAT. § 343.305. A person who operates a motor vehicle in this state is deemed to have given consent to one or more tests of his or her blood, breath, or urine upon the request of a law enforcement officer if the person is arrested for a drunk driving offense. Sec. 343.305(2). Pursuant to § 343.305(3)(a), a law enforcement officer may request that a person arrested for an OWI provide one or more samples of the person's blood, breath, or urine for testing.

¶ 10. Here, for the purposes of this appeal, neither party questions that pursuant to Wisconsin's Implied Consent Law, a law enforcement officer, having obtained a voluntary sample of breath, blood, or urine

for chemical testing, may *request* that the driver give a second, different sample for testing. Rather, the specific issue we address is: if the driver then refuses the officer's request for the second, different sample, whether the warrantless and nonconsensual extraction and testing of the driver's blood for evidence is still legally valid under the exigent circumstances exception to the Fourth Amendment. Stated another way, we decide whether the exigent circumstances justifying a warrantless blood draw are automatically extinguished after a law enforcement officer has already obtained a valid, voluntary breath test. As we mentioned earlier, *Krajewski* is the starting point of our analysis of this issue.

¶ 11. There, Krajewski was arrested on probable cause for OWI. *Krajewski*, 255 Wis. 2d 98, ¶¶ 1, 7. When asked to submit to a blood test, Krajewski refused, citing a fear of needles. *Id.*, ¶ 9. Krajewski instead offered to provide a breath or urine sample. *Id.* Krajewski was then forced to submit to a blood draw. *Id.*, ¶ 12. On appeal, Krajewski acknowledged that the rapid dissipation of alcohol in a person's bloodstream creates an exigency justifying a forcible blood draw when a person refuses to submit to any chemical test, but argued that once the person offers to submit to an alternative chemical test, the exigency disappears and the officer may not proceed with an involuntary test without a search warrant. *Id.*, ¶ 34.

¶ 12. Our supreme court rejected this argument and held that a person's agreement to submit to a test of the person's choice does not negate the exigency created by the dissipation of alcohol in the bloodstream, nor does it render unconstitutional a nonconsensual test of the officer's choice. *Id.*, ¶ 63. The court explained that an arrested person's offer to submit to one

chemical test rather than another does not slow the dissipation of alcohol. *Id.*, ¶ 37. According to the court, "[t]he evidence remains on a course to be destroyed." *Id.* The court reasoned that the arrested person could fail to give a sufficient breath specimen and/or have a change of heart and refuse altogether to submit to the test. *Id.*, ¶ 38. The court also noted that securing a breath test rather than a blood test may not be satisfactory to law enforcement because an officer may want to determine whether the person is also under the influence of controlled substances and a breath test is not likely to reveal the presence of a controlled substance. *Id.*, ¶ 40. Thus, the court concluded that "[t]he exigency that exists because of dissipating alcohol does not disappear until a satisfactory, useable chemical test has been taken." *Id.*

¶ 13. It is this last statement by the court that the parties ask us to clarify. It is the State's position that the exigency created by the dissipation of alcohol from the bloodstream of a person lawfully arrested for drunk driving does not automatically disappear when a single valid chemical test for intoxication has been performed. The State argues that the exigency justifying a warrantless blood draw following a valid drunk driving arrest is based on the continuous and rapid dissipation of alcohol from the bloodstream, not the presence or absence of other positive test results. This argument flies in the face of our supreme court's clear directive in *Krajewski*.

■

¶ 14. By its plain language, *Krajewski* instructs that once a satisfactory and useable chemical test is taken, the exigency created by the dissipation of alcohol is extinguished. This conclusion is logical given the concerns that prompted the supreme court's holding in

that case; namely, that the driver would later refuse to cooperate with authorities in submitting to a breath test and/or fail to give a valid breath specimen and, consequently, precious time, during which the evidence would continue to dissipate, risks being lost. These concerns do not come into play once a satisfactory, useable chemical test has been performed—law enforcement would have already collected the evidence it needs. Unless law enforcement has some basis for believing the first test is unreliable or unusable, the exigent circumstances permitting law enforcement to conduct a forcible blood draw no longer exist.

¶ 15. The State also appears to argue that even if it appeared to police at the time of the arrest that a satisfactory, useable chemical breath test had been administered, the defendant could later successfully attack the breath test at trial and therefore the exigency does not disappear. However, we do not interpret *Krajewski* as saying that the determination of whether a chemical test is satisfactory and useable is made at the time of trial. Rather, this determination is to be made at the time the blood alcohol is dissipating in the alleged drunk driver's system—the time at which the Fourth Amendment intrusion is to occur.

¶ 16. We are of course bound by the plain language used by the supreme court in *Krajewski*. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) (holding that only the supreme court has the power to overrule, modify or withdraw language from a previous supreme court opinion). Accordingly, we hold that after an individual arrested on probable cause for drunk driving has provided a satisfactory and useable

chemical test, the exigent circumstances justifying a warrantless and nonconsensual blood draw no longer exist.[2]

¶ 17. In the case at hand, the record contains no evidence that the police were concerned about the breath test being in any way unsatisfactory or unusable. For example, there is no evidence that the equipment was not working properly or that Faust's breath sample was otherwise insufficient. In fact, at the motion hearing, Olsen testified that he believed he had obtained a valid and useable sample of Faust's breath. The intoximeter reading was .09, which established that Faust was operating with a prohibited blood alcohol level, given his two prior convictions, and Olsen testified that he was aware of this. Olsen also acknowledged that he had no reason to believe that Faust was under the influence of some other type of controlled substance and he did not request the blood test for the purpose of detecting the presence of controlled substances. It appears that Faust had consented to and provided a satisfactory and useable chemical breath test as required by *Krajewski*. We therefore conclude that

---

[2] In this case, there was no dispute that the breath test was, in the opinion of the officer, valid. It is also undisputed that Faust tested over the limit. We express no opinion as to whether exigent circumstances would remain if the defendant tested under the limit. We will leave it up to a future court to decide whether a result unfavorable to police is, in the words of the *Krajewski* court, not "satisfactory" and "useable" such that exigent circumstances remain. *See State v. Krajewski*, 2002 WI 97, ¶ 40, 255 Wis. 2d 98, 648 N.W.2d 385, *cert. denied*, 537 U.S. 1089 (2002). To decide the issue now would be nothing more than dicta because, as we have noted, the breath test result here was over the limit for Faust.

the trial court correctly determined that exigent circumstances did not exist to justify the warrantless and nonconsensual blood draw and thus properly suppressed the evidence derived therefrom. We affirm.

*By the Court.*—Order affirmed.

¶ 18. NETTESHEIM, J. (*concurring*). With little confidence, I join the majority opinion. My hesitancy about this case stems not from the majority opinion, but rather from the case on which it is founded—*State v. Krajewski*, 2002 WI 97, 255 Wis. 2d 98, 648 N.W.2d 385, *cert. denied*, 537 U.S. 1089 (2002). In my judgment, *Krajewski* is internally inconsistent and sends mixed signals. I join my colleagues in this case only because an isolated passage in *Krajewski* mandates an affirmance and I, like the majority, am bound by the pronouncements of our supreme court. *See Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997).

¶ 19. The ultimate holding of *Krajewski* is that "the warrantless blood draw in this case was properly based on exigency and complied with [the] factors enumerated in *Bohling*."[1] *Krajewski*, 255 Wis. 2d 98, ¶ 3. I agree with this holding. I also agree with the logic of *Krajewski*, which explains in some detail why the exigency of dissipating alcohol persists even in the face of an existing breath test. *Id.*, ¶¶ 40–42. Unfortunately, the opinion prefaces this discussion with the following sentence upon which the majority hangs its hat: "[t]he exigency that exists because of dissipating alcohol does not disappear until a satisfactory, useable chemical test has been taken." *Id.*, ¶ 40; Majority at ¶ 12.

¶ 20. Having made that statement, *Krajewski* then embarks on a discussion which seems to contradict it. In the very next sentence, *Krajewski* says, "Securing

---

[1] *State v. Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993).

a breath test rather than a blood test may not be satisfactory to law enforcement because an officer may want to determine whether the person is also under the influence of controlled substances."[2] *Krajewski*, 255 Wis. 2d 98, ¶ 40.

¶ 21. But the contradiction does not stop there. In the very next paragraph, *Krajewski* states, "Even when a person submits to a breath test in lieu of a blood test—outside the provisions of the implied consent statute—the test may be subject to challenge on grounds that the person's consent to the test was not given freely and voluntarily." *Id*. at ¶ 41. While Faust's breath test was administered under the auspices of the implied consent law, that law does not guarantee that the requirements of the criminal law governing the free and voluntary giving of consent have otherwise been satisfied. Moreover, the implied consent statute does not restrict the police from using other *constitutional* means to collect evidence of the driver's intoxication. *State v. Gibson*, 2001 WI App 71, ¶ 12, 242 Wis. 2d 267, 626 N.W.2d 73.

¶ 22. In short, my concern is that the police do not have a crystal ball in these situations, a proposition which the *Krajewski* decision seems to recognize. While the police here presumably believed that they had obtained a valid breath test, this does not guarantee, in the very words of *Krajewski*, a *satisfactory and useable* breath test. That determination would depend on a

---

[2] WISCONSIN STAT. § 346.63(1) prohibits not only operating under the influence of an intoxicant, but also operating under the influence of a controlled substance, a controlled substance analog, or any combination of the three. The statute also prohibits operating under the influence of any other drug that impairs the ability to operate a motor vehicle or any combination of an intoxicant and such drug.

future ruling by the trial court in the event Faust should challenge the breath test. We must bear in mind that this case is before us via the State's appeal from the trial court's order granting Faust's motion to suppress. *See* WIS. STAT. § 974.05(1)(d)2. Thus, this case remains pending in the trial court.

¶ 23. This same concern applies to Faust's status as an alleged third-time offender. Faust's breath test produced a result of 0.9 grams of alcohol per 210 liters of breath, which was above the 0.8 level for such an offender, but below the .10 level for a first- or second-time offender. WIS. STAT. § 885.235(1g)(c), (cd). Here again, without a crystal ball, the police had no assurance that some or all of Faust's prior convictions would go unchallenged. Should that occur and should any one of the prior two convictions be unfounded, the State will be required to prove that Faust operated a motor vehicle with a PAC of .10 or more, not 0.8 or more. Both this court and the supreme court have seen a steady stream of challenges (some successful) to alleged prior convictions in criminal cases. *See State v. Saunders*, 2002 WI 107, ¶ 1, ¶ 54, 255 Wis. 2d 589, 649 N.W.2d 263; *State v. Wideman*, 206 Wis. 2d 91, 94, 107–08 n.24, 556 N.W.2d 737 (1996); *State v. Koeppen*, 195 Wis. 2d 117, 121, 130, 536 N.W.2d 386 (Ct. App. 1995); *State v. Theriault*, 187 Wis. 2d 125, 130, 132 n.1, 522 N.W.2d 254 (Ct. App. 1994); *State v. Goldstein*, 182 Wis. 2d 251, 254, 261, 513 N.W.2d 631 (Ct. App. 1994).[3]

---

[3] The same can be said for the steady stream of challenges that the appellate courts have seen to breathalyzer results. *See, e.g., City of New Berlin v. Wertz*, 105 Wis. 2d 670, 672, 314 N.W.2d 911 (Ct. App. 1981) (defendant moved to suppress the breathalyzer test results on the grounds that the testing procedures and methods did not meet certain administrative code requirements); *State v. Walstad*, 119 Wis. 2d 483, 504, 351

¶ 24. The supreme court's isolated statement in *Krajewski*, upon which the majority opinion rests, appears to hold that the exigency of an OWI suspect's dissipating alcohol level is eliminated because a blood test would merely provide corroborating evidence of the breath test.[4] I have examined the law of exigent circumstances and can find no case law or other commentary that has made this statement. To the contrary, in *State v. Bohling*, 173 Wis. 2d 529, 494 N.W.2d 399 (1993), where our supreme court first approved the forcible taking of an OWI suspect's blood draw, the court said:

> We hold that the dissipation of alcohol from a person's bloodstream constitutes a sufficient exigency to justify a warrantless blood draw under the following circumstances: (1) the blood draw is taken at the direction of

N.W.2d 469 (1984) (defendant challenged the breathalyzer result before trial court based on whether a used breathalyzer test ampoule is retestable); *State v. Busch*, 217 Wis. 2d 429, 436, 576 N.W.2d 904 (1998) (defendant moved to suppress on grounds that modified version of intoxilyzer machine had not been evaluated and approved for use by the chief of the chemical test section); *State v. Dwinell*, 119 Wis. 2d 305, 308, 349 N.W.2d 739 (Ct. App. 1984) (defendants challenged the admission of breathalyzer test results on grounds that the intoxilyzer machine, the Intoximeter 3000, was an unreliable and inaccurate measuring device); *State v. Burkman*, 96 Wis. 2d 630, 634, 292 N.W.2d 641 (1980) (the trial court excluded breathalyzer results because the officer failed to comply with administrative procedures requiring that the subject be kept under continuous observation for at least twenty minutes prior to the collection of the breath specimen). In addition, this court has addressed the admissibility of breathalyzer test results in a steady stream of single judge appeals.

[4] Of course, if the breath test should be suppressed, the blood test would not be corroborating evidence. Instead, it would be the only evidence of a PAC violation. The same is true if any of Faust's prior convictions should be struck.

a law enforcement officer from a person lawfully arrested for a drunk-driving related violation or crime, and (2) there is a clear indication that the blood draw will produce evidence of intoxication.

*Id.* at 547–48. Here, all of the factors contemplated by *Bohling* were present. The dissipation of alcohol existed as a matter of law. The blood draw was taken at the direction of a law enforcement officer. Finally, there was clear evidence that a blood draw would produce evidence of intoxication. If I were writing on a clean slate, I would hold that the exigency of Faust's dissipating blood alcohol level was not eliminated simply because the police had already obtained a breath test result.

¶ 25. Appellate courts sometimes criticize the police for failing to conduct a thorough investigation. *See State v. Kieffer*, 217 Wis. 2d 531, 550–51, 577 N.W.2d 352 (1998). Here, we criticize the police for being too thorough. I dislike the result in this case. But given the supreme court's utterance in *Krajewski*, I see no choice but to affirm. I reluctantly concur.