MATTHEW F. ANICH, District Attorney Ashland County
You ask whether sec. 985.08(5), Stats., prohibits a municipality from expending funds to publish the text of a legal notice in a shopper paper which does not meet the circulation and publication requirements in sec. 985.03(1)(a), Stats., even in situations where the text of the notice is simultaneously published in the municipality's official newspaper.
In my opinion, secs. 985.03(1)(a) and 985.08(5), Stats., contain such a prohibition.
Section 985.08(5), Stats., provides: "Except as otherwise provided in this section, no fee shall be paid and no public funds shall be used for subsidizing any privately owned newspaper for payment for any *Page 178 
legal notice, which newspaper has not previously qualified as a public newspaper as defined in s. 985.03 "
A municipality may designate one official newspaper under sec.985.05(1), Stats. If it elects to do so, the text of all legal notices must be published in the designated newspaper. Sec.985.05(2), Stats. Section 985.05(2), Stats., has been interpreted by this office as requiring that the text of any legal notice be published, at a minimum, in the municipality's official newspaper; sec. 985.02(1), Stats., was interpreted to also permit publication in other qualified newspapers. 60 Op. Att'y Gen. 95 (1971).
To be a qualified newspaper, a publication must meet the requirement that:
 [F]or at least 2 years, immediately before the date of the notice publication, the newspaper has been published regularly and continuously in the city, village or town where published, and has had a bona fide paid circulation:
 1. That has constituted 50% or more of its circulation; and,
 2. That has had actual subscribers at each publication of not less than 1,000 copies in 1st and 2nd class cities, or 300 copies if in 3rd and 4th class cities, villages or towns.
Sec. 985.03(1)(a), Stats.
This office has previously indicated that funds may not be expended to publish the text of a legal notice in a publication with no paid circulation. 39 Op. Att'y Gen. 347 (1950). The following discussion contained in Wisconsin Legislative CouncilCommittees, 1963-65, V. 7, Minutes of Legal Notices Advisory Committee, June 17, 1964, at 3, indicates that the holding in 39 Op. Att'y Gen. 347 (1950) is also applicable to secs. 985.03(1) and 985.08(5), Stats.:
 § 985.03(1) — This section is not now a part of the bill. Mr. Zielke suggested an amendment in regard to the paid circulation and also as to shutdowns due to strike, lockout, war, fire, or act of God. The amendments which he proposed were incorporated into the section and annexed to the minutes of the March 18, 1964, meeting. Discussion followed as to the exact intent of Mr. Zielke in proposing the suggested changes. He stated that the changes would guarantee that the circulation is in the area where the newspaper is published and that paid circulation *Page 179 
is the basis. Mr. Zielke said that if paid circulation is one of the requisites it should be made to mean something, otherwise it should be omitted. Mr. Tipler presented the situation where a newspaper, due to tourist trade during a part of the year, may tend to give away a large quantity of newspapers to obtain tourist trade for the merchants advertising therein. Under such a situation the newspaper could never qualify if these amendments were enacted. Mr. Zielke said that frequently he has seen it work just the opposite. That is why the amendments were proposed.
Since the substance of the proposed amendments was adopted, it is a reasonable inference that the Legislature intended to require publication in newspapers with paid circulation.
You question, however, whether a shopper paper contains sufficient "reports of happenings of recent occurrence of a varied character, such as political, social, moral and religious subjects . . ." to qualify as a newspaper under sec.985.03(1)(c), Stats. It is my opinion that the quantity of news or the number of reports contained in a shopper publication is immaterial; a shopper publication containing any such items is a "newspaper" within the meaning of sec. 985.03(1)(c), Stats. Cf.Greenfield Town Crier v. Com'r of Revenue, 385 Mass. 692,433 N.E.2d 898 (1982).
Finally, you question whether publication of the text of a legal notice in a non-qualifying newspaper or other print media is tantamount to the publication of a "legal notice" under sec.985.01(1), Stats., in situations where the text of that legal notice is also published in a qualifying newspaper. The definition of the term "legal notice" is extremely broad. 39 Op. Att'y Gen. 347, 348 (1950). Recognizing the breadth of the term, the Legislature provided in sec. 985.08(6), Stats., that: "In addition to required legal notice, the requisitioning agency may also publish such notice in other media such as trade journals and newspapers published in this state devoted substantially to the publication of official notices to bidders, but suchadditional notice shall not be construed as a legal notice." The underscored language would not have been employed unless each insertion in one of the print media would ordinarily constitute the publication of a "legal notice." It is therefore my opinion that, except for publication in trade journals and similar publications specifically designed to give notice to bidders, each time the text of an item *Page 180 
which must be published appears in the print media, the publication of a "legal notice" within the meaning of sec.985.01(1), Stats., occurs.
I therefore conclude that a municipality may not expend funds to publish the text of a legal notice in a shopper paper which does not meet the qualifications contained in sec. 985.03(1)(a), Stats.
BCL:FTC