STATE of Wisconsin, Plaintiff-Appellant,

v.

Robert F. MUEHLENBERG, Defendant-Respondent.

Court of Appeals

*No. 83–1598. Submitted on briefs February 9, 1984.—*
*Decided March 27, 1984.*
(Also reported in 347 N.W.2d 914.)

For the plaintiff-appellant, the cause was submitted on the briefs of *Bronson C. La Follette,* attorney general, and *Jerome S. Schmidt,* assistant attorney general.

For the defendant-respondent, the cause was submitted on the brief of *Turner & Pogodzinski, S.C.,* of Milwaukee. *John S. Schiro,* of counsel.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Section 346.63 (1) (b), Stats., prohibits the operation of a motor vehicle if the driver has a blood alcohol concentration of .10% or more. The driver in this case, Robert F. Muehlenberg, claims that the statute is void for vagueness because it is not possible for a person to determine by his own senses whether his blood alcohol concentration is a "legal" .09% or an "illegal" .10%. The trial court, persuaded by Muehlen-

berg's reasoning, found the statute unconstitutional. We reverse.

The significance of this issue cannot be underestimated. As early as 1957, our United States Supreme Court commented that "[t]he increasing slaughter on our highways [caused by drunk drivers], most of which should be avoidable, now reaches the astounding figures only heard of on the battlefield." *Breithaupt v. Abram,* 352 U.S. 432, 439 (1957) (footnote omitted). This grievous situation remains unchanged. The United States Supreme Court recently commented:

The situation underlying this case—that of the drunk driver—occurs with tragic frequency on our Nation's highways. The carnage caused by drunk drivers is well documented and needs no detailed recitation here. This Court, although not having the daily contact with the problem that the state courts have, has repeatedly lamented the tragedy.

*South Dakota v. Neville,* —— U.S. ——, 74 L. Ed 2d 748, 755 (1983).

The Wisconsin legislature in 1977, recognizing the need to protect the public and provide maximum highway safety, fortified its "driving under the influence" statute, sec. 346.63(4), Stats. (1979), by creating a presumption of being under the influence if a driver had .10% or more of alcohol in his or her blood. As the California Supreme Court has recently noted, however, even this fortification, which considerably assisted the prosecution of "driving under the influence" cases, proved deficient in many regards. *Burg v. Municipal Court for the Santa Clara Judicial District,* 673 P.2d 732, 735 (Cal. 1983). The *Burg* court discussed this inadequacy and also pointed out a further strengthening of the law known as the Scandinavian Model. The court commented:

Even these laws, which considerably assisted the prosecution of "driving under the influence" cases, proved inadequate in many respects. Under them, the ultimate question was defined in terms of the defendant's subjective behavior and condition: "Was the defendant under the influence at the time he drove?" Celerity and certainty of punishment were frustrated by the ambiguity of the legal criteria; no matter what his blood-alcohol level, a defendant could escape conviction merely by raising a doubt as to his intoxication.

In response to this continuing problem, in the past decade most states enacted additional legislation supplementing existing "driving under the influence" statutes and fashioned after what has been termed the "Scandinavian model." [Citations omitted.]

*Id.* Wisconsin, by promulgation of sec. 346.63(1)(b), Stats., is one of the states that has adopted the Scandinavian Model.[1] This model replaces the presumptive element of sec. 346.63(4), Stats. (1979), and defines the substantive offense not by the subjective term "driving under the influence" but instead by the act of driving with a specified blood alcohol level. Under this law, proof of being "under the influence" is unnecessary. The statute represents a legislative determination that public safety is per se endangered when a person drives a motor vehicle while having a specified concentration of .10% or more by weight of alcohol in the blood.[2]

[1] H. Ross, *Deterring the Drinking Driver*, 21–70 (1982); Ross, *The Scandinavian Myth: The Effectiveness of Drinking-and-Driving Legislation in Sweden and Norway*, 4 J. Legal Stud. 285 (1975); Votey, *Scandinavian Drinking—Driving Control: Myth or Intuition?*, 11 J. Legal Stud. 93 (1982).

[2] The legislative findings and intent in the passage of this statute are clearly outlined in sec. 2051(13), ch. 20, Laws of 1981, as amended by ch. 184, Laws of 1981.

OPERATING A MOTOR VEHICLE UNDER THE INFLUENCE OF INTOXICANT OR CONTROLLED SUBSTANCE. (a) The legislature finds that:

1. Operation of motor vehicles by persons who are under the influence of an intoxicant or have a blood alcohol concentration of 0.1% or more seriously threatens the public safety and welfare.

Muehlenberg claims that the problem with the Scandinavian Model is that people are unable to determine when their blood alcohol content is about to reach the proscribed level. He argues that it calls for speculation and is especially onerous when a person is neither exhibiting nor feeling any symptoms of alcoholic influence. Thus, concludes Muehlenberg, persons of common intelligence must necessarily guess at its meaning and differ as to its applicability. Therefore, the statute is unconstitutionally vague.

Legislative enactments are presumed constitutional. *Mack v. State,* 93 Wis. 2d 287, 297, 286 N.W.2d 563, 568 (1980). This court will sustain a statute against attack

2. Persons who operate motor vehicles while under the influence of an intoxicant or having a blood alcohol concentration of 0.1% or more do so in disregard of the safety and welfare of both themselves and other members of the driving public and of the laws of this state.

3. Penalties are an important and necessary element in deterring the operation of motor vehicles by those persons.

4. A substantial number of persons who operate motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more are in need of treatment or education or both to prevent further offenses related to the use of intoxicants.

(b) The legislature intends by passage of this act:

1. To provide maximum safety for all users of the highways of this state.

2. To provide penalties sufficient to deter the operation of motor vehicles by persons who are intoxicated or have a blood alcohol concentration of 0.1% or more.

3. To deny the privileges of operating motor vehicles to persons who have operated their motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more.

4. To encourage the vigorous prosecution of persons who operate motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more.

5. To promote driver improvement, through appropriate treatment or education or both, of persons who operate motor vehicles while intoxicated or having a blood alcohol concentration of 0.1% or more.

if there is any reasonable basis for the exercise of the legislative power. *Id.*

Concisely stated, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* —— U.S. ——, 75 L. Ed. 2d 903, 909 (1983). In analyzing whether a particular statute is void for vagueness, two prongs must be considered. First, "[a] criminal statute must be sufficiently definite to give a person of ordinary intelligence who seeks to avoid its penalties fair notice of conduct required or prohibited." *State v. Popanz,* 112 Wis. 2d 166, 173, 332 N.W.2d 750, 754 (1983). Second, the "statute must also provide standards for those who enforce the laws and those who adjudicate guilt." *Id.*

We will begin with the second prong because it will not detain us long. The ".10%" offense easily comports with the second prong of this analysis. The statute could not be more precise as a standard of law enforcement. Because no discretion is given to the police, those officials charged with enforcing the law can objectively ascertain whether a defendant's conduct meets the terms of the law without having to create or apply their own standards. *Id.* In fact, Muehlenberg concedes that this prong is satisfied.

Turning to the first prong of the void-for-vagueness test, "a statute will be held to be vague in the constitutional sense only if it is so obscure that persons of common intelligence must necessarily guess at its meaning and differ as to its applicability." *State v. Tronca,* 84 Wis. 2d 68, 86, 267 N.W.2d 216, 224 (1978).

We agree with the Arizona Supreme Court in *Fuenning v. Superior Court,* No. 17049–SA, slip op (Dec. 15, 1983), *reconsideration denied,* Feb. 27, 1984, that pragmatically there may be no way for a particular drinker to know the precise moment when he or she reaches the physiological point at which driving or controlling the vehicle will violate the law. But like the *Fuenning* court, we take judicial notice that it requires more than a small amount of alcohol to produce a .10% blood alcohol content.[3] "Those who drink a substantial amount of alcohol within a relatively short period of time are given clear warning that to avoid possible criminal behavior they must refrain from driving." *Fuenning,* No. 17049–SA, slip op at 13.

While a driver may not be able to determine that his blood alcohol content is .10% rather than .09%, absolute precision is not required to prevent the statute from being declared vague. "[A] statute need not meet impossible standards of specificity . . . to survive a challenge under the vagueness doctrine. All that is required is a fair degree of definiteness." *Tronca,* 84 Wis. 2d at 86, 267 N.W.2d at 224 (citations omitted).

A person of common intelligence can, with a fair degree of definiteness, believe himself or herself to be in jeopardy of violating the statute if a significant quantity of alcohol has been consumed. There are those who will

---

[3] The Wisconsin Department of Transportation and the Office for Highway Safety have distributed numerous charts and guides to the public. These charts and guides show, with some accuracy, the number of different alcoholic beverages necessary for a particular individual to reach a blood alcohol level of .10%. For example, a person weighing 160 pounds will reach the "danger zone" (.05%) after as few as two or three average drinks or beers in one hour. A blood alcohol level of .10% can be reached after four to five drinks in a one-hour period. These charts, although not scientifically precise, serve as helpful guides.

ask how one determines when a "significant" amount has been imbibed. The answer is that any person with common sense will know when consumption is *approaching* a meaningful amount. That is the point at which they are on notice—they have "clear warning" that if they drive, they do so at their own risk. Due process mandates that a person receive "fair notice" of the conduct required or prohibited so as to avoid "[v]ague laws [which] trap the innocent by not providing fair warning." *Grayned City of Rockford*, 408 U.S. 104, 108 (1972). One who drinks a significant amount of alcohol cannot claim to be innocently trapped when faced with a decision of whether to drive. If the person chooses to drive, he or she does so not only at the public's peril, but also at their individual peril. That is what the law clearly tells us all, and it is a rule which we can and must live with. As the California Supreme Court stated:

One who drives a vehicle after having ingested sufficient alcohol to approach or exceed the level proscribed is neither "innocent" within the meaning of *Grayned,* nor is he without fair warning. . . . It is difficult to sympathize with an "unsuspecting" defendant who did not know if he could take a last sip without crossing the line, but who decided to do so anyway.

The very fact that he has consumed a quantity of alcohol should notify a person of ordinary intelligence that he is in jeopardy of violating the statute.

*Burg v. Municipal Court for the Santa Clara Judicial District,* 673 P.2d at 741 (citations and footnotes omitted). The decision of the trial court is reversed.

*By the Court.*—Order reversed.