STATE of Wisconsin, Plaintiff-Respondent,

v.

Michael J. McMANUS, Defendant-Appellant. [Case No. 87–1815–CR.]

STATE of Wisconsin, Plaintiff-Respondent,

v.

William A. PANGMAN, Defendant-Appellant. [Case No. 88–0951.]

Supreme Court

*Nos. 87–1815–CR, 88–0951. Argued September 8, 1989.—Decided November 15, 1989.*

(Also reported in 447 N.W.2d 654.)

For the defendant-appellant Michael J. McManus there were briefs by *Ralph A. Kalal,* and *Kalal and Habermehl,* Madison, and oral argument by *Ralph A. Kalal.*

For the plaintiff-respondent the cause was argued by *Jerome S. Schmidt,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

For the defendant-appellant William A. Pangman there were briefs (in court of appeals) by *Richard L. Kaiser, Peter J. Heflin,* and *William A. Pangman & Associates,* Waukesha, and oral argument by *Mr. Kaiser.*

For the plaintiff-respondent there was a brief (in court of appeals) and oral argument by *Christopher W. Stock,* Ozaukee county assistant district attorney, serving as special prosecutor.

DAY, J. This opinion decides two cases that involve the construction and constitutionality of that part of sec. 346.63(1)(b), Stats. which prohibits driving or operating a motor vehicle with 0.1 grams or more of alcohol in 210 liters of breath. Defendant-Appellant Michael J. McManus appeals a judgment of conviction of the circuit court for Dane county, the Honorable George A.W. Northrup presiding. Defendant-Appellant William A. Pangman appeals a judgment of conviction of the circuit court for Waukesha county, the Honorable Walter J. Swietlik presiding. This court accepted the appeals on certifications from the court of appeals, pursuant to sec. 809.61.

Mr. McManus was arrested and issued a citation for operating a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats., (1985–86) on March 22, 1986, after a city of Madison police officer observed him drive his car over the curb of a city street. McManus submitted to a breath test which showed a breath alcohol concentration of 0.13 grams per 210 liters of breath. The breath test was performed by an "Intoxilyzer 5000," a Wisconsin Department of Transportation approved breath testing device. *See* Wis. Admin. Code Sec. Trans. 311.04. On that basis, McManus was issued a second citation for operating a motor vehicle with 0.1 grams or more of alcohol in 210

119

liters of breath, contrary to sec. 346.63(1)(b). Following a trial by jury, McManus was acquitted on the first charge, but found guilty of violating sec. 346.63(1)(b).

Mr. Pangman was arrested and issued a citation for operating a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1)(a), Stats., (1987–88) on April 26, 1987, after a Wisconsin state patrol officer observed him driving erratically on an interstate highway. Pangman submitted to an Intoxilyzer 5000 breath test which showed a breath alcohol concentration of 0.11 grams per 210 liters of breath. On that basis, Pangman was issued a second citation for operating a motor vehicle with 0.1 grams or more of alcohol in 210 liters of breath, contrary to sec. 346.63(1)(b). Following a trial by jury, Pangman was found guilty on both charges.

Pangman contends the circuit court misconstrued sec. 346.63(1)(b), Stats., as establishing a per se breath violation and erroneously excluded evidence of the breath to blood partition ratio utilized by the Intoxilyzer 5000 and Pangman's particular partition ratio. Pangman alternatively contends, and is joined in this contention by McManus, that if sec. 346.63(1)(b), sets forth a per se breath violation, the statute unconstitutionally violates the due process and equal protection clauses of the United States and Wisconsin Constitutions. Pangman additionally contends that the Wisconsin Department of Transportation has unconstitutionally usurped legislative authority by implicitly defining the term "breath" in sec. 346.63(1)(b) and that sec. 346.63(1)(b) is unconstitutionally vague as applied. Pangman further contends the circuit court erred in admitting into evidence Pangman's breath test result and expert testimony relating the degree of impairment caused by a breath alcohol concentration of 0.1 grams of alcohol in 210 liters of

breath. We find none of Defendants' contentions persuasive and affirm both convictions.

## I. CONSTRUCTION OF SEC. 346.63(1)(b), STATS., AND ADMISSIBILITY OF PARTITION RATIO EVIDENCE.

Pangman contends the circuit court misconstrued sec. 346.63(1)(b), Stats., as establishing a per se breath violation and erroneously excluded as irrelevant evidence relating to the partition ratio utilized by the Intoxilyzer 5000 and his particular partition ratio.

The partition ratio provides the means by which a breath test result is converted to a corresponding blood alcohol concentration. The Intoxilyzer 5000 utilizes a partition ratio of 2,100:1, which provides that for every molecule of alcohol in the breath there are assumed to be 2,100 molecules of alcohol in the blood. The 2,100:1 ratio is utilized by all breath testing devices. Although a person's particular partition ratio may vary from that assumed by the Intoxilyzer 5000, the 2,100:1 ratio has been shown to either correctly estimate or underestimate a person's corresponding blood alcohol concentration with 94 percent accuracy. *See* Harding & Field, *Breathalyzer Accuracy in Actual Law Enforcement Practice: A Comparison of Blood- and Breath-Alcohol Results in Wisconsin Drivers,* 32 Journal of Forensic Sciences 1235, 1237–38 (1987); *see also State v. Brayman,* 110 Wash. 2d 183, 751 P.2d 294, 300 (1988).

At trial, Pangman sought to introduce evidence that his particular partition ratio is only 1,890:1. On the basis of that partition ratio, Pangman calculates his corresponding blood alcohol concentration to be only 0.098 percent.

■

The decision to admit or exclude evidence will only be overturned on appeal where the circuit court has abused its discretion. *State v. Hinz,* 121 Wis. 2d 282, 285, 360 N.W.2d 56 (Ct. App. 1984). "To find an abuse of discretion an appellate court must find either that discretion was not exercised or that there was no reasonable basis for the trial court's decision." *Wisconsin Public Service Corp. v. Krist,* 104 Wis. 2d 381, 395, 311 N.W.2d 624 (1981).

Pangman does not argue that the circuit court failed to exercise discretion in making its ruling. The record clearly indicates otherwise. The issue was briefed and argued by the parties, and the circuit court rendered a written decision excluding the partition ratio evidence.

Pangman's challenge is that there exists no reasonable basis for the circuit court's decision. The circuit court excluded the evidence on the basis sec. 346.63(1)(b), Stats., unambiguously sets forth a per se rule that it is a violation of the statute to drive or operate a motor vehicle with a breath alcohol concentration of 0.1 grams or more of alcohol in 210 liters of breath. A person's corresponding blood alcohol concentration as calculated by means of his or her particular partition ratio, the circuit court reasoned, is irrelevant to that determination. Pangman argues the circuit court's decision is without a reasonable basis because sec. 346.63(1)(b) merely sets forth a statutory presumption that 0.1 grams of alcohol per 210 liters of breath is the equivalent of a blood alcohol concentration of 0.1 percent. Pangman asserts the excluded partition ratio evidence is relevant to rebut that presumption.

■

The interpretation of a statute is a question of law which this court may review without deference to the

lower court. *Delvaux v. Vanden Langenberg,* 130 Wis. 2d 464, 475, 387 N.W.2d 751 (1986). The primary source to be used in construing a statute is the statutory language itself. *State v. Sher,* 149 Wis. 2d 1, 8-9, 437 N.W.2d 878 (1989).

Section 346.63(1)(b), Stats., at the times both McManus and Pangman were charged, provided:

> **(1)** No person may drive or operate a motor vehicle while:
>
> (b) The person has a blood alcohol concentration of 0.1% or more by weight of alcohol in the person's blood or 0.1 grams or more of alcohol in 210 liters of that person's breath.

We agree with the circuit court's conclusion that sec. 346.63(1)(b), Stats., unambiguously sets forth a per se breath violation which renders irrelevant evidence of the partition ratio utilized by the Intoxilyzer 5000 and Pangman's particular partition ratio. The statute provides it is a violation to drive or operate a motor vehicle with 0.1 grams of alcohol or more in 210 liters of the person's breath. There is no requirement in sec. 346.63(1)(b) that a person's breath test result must be converted to a corresponding blood alcohol concentration. Nor is there a requirement in the statute that a person violating the breath standard must have violated the blood standard as well.

Pangman argues sec. 346.63(1)(b), Stats., is at least ambiguous. Pangman asserts that in creating the statute, the legislature intended only to prohibit driving or operating a motor vehicle with a blood alcohol concentration of 0.1 percent or more and intended only that a breath test provide an alternative means of establishing blood alcohol concentration.

We find no support for Pangman's argument in the legislative history of the statute. Section 346.63(1)(b), Stats., was enacted in Chapter 20 of the Laws of 1981. Prior to the passage of Chapter 20, there was no per se alcohol violation. Rather, there existed only a number of statutory presumptions relating to driving or operating a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1) (1979–80). Section 346.63(4) (1979–80), set forth a presumption that a person with a blood alcohol concentration of 0.1 percent or more was *prima facie* under the influence of an intoxicant. Section 885.235(2a) (1979–80), provided the concentration of alcohol in 2100 cubic centimeters of deep lung or alveolar breath was *prima facie* equal to the concentration of alcohol in one cubic centimeter of blood. In Chapter 20, the legislature eliminated those presumptions and created the per se violations of sec. 346.63(1)(b). Had the legislature intended the breath provision to be merely a statutory presumption, it would not have eliminated the breath to blood presumption in sec. 885.235(2a), (1979–80). Similarly, in Chapter 20 the legislature amended sec. 885.235 to provide that a person with 0.1 grams of alcohol or more in 210 liters of breath was *prima facie* under the influence of an intoxicant. Prior to that amendment, only a blood alcohol concentration of 0.1 percent or more was *prima facie* evidence the person was under the influence of an intoxicant. Again, had the legislature intended the breath provision to be merely a statutory presumption, it would not have given the breath provision *prima facie* effect in sec. 885.235 as it had the blood provision.

One writer has noted the legislature's passage of Chapter 20 established a per se breath violation which renders evidence of a person's partition ratio irrelevant.

> A recent change in the law also defines statutory violations in terms of breath alcohol concentrations . . .. Not only does [sec. 885.235(1)(c), Stats.] eliminate any need to establish an individual's personal blood/breath ratio, it goes beyond the concept of defining a ratio by statute to defining the offense in terms of the actual measured breath alcohol concentration.

Field, *Alcohol and Other Drugs in Wisconsin Drivers: The Laboratory Perspective,* 69 Marq. L. Rev. 235, 239 (1985–86).

In *Brayman,* the Washington Supreme Court likewise considered a state statute which set forth a per se breath violation, and held partition ratio evidence irrelevant. *See e.g. Brayman,* 751 P.2d at 298.

Pangman, relying upon a statement by this court in *State v. Walstad,* 119 Wis. 2d 483, 351 N.W.2d 469 (1984), argues sec. 346.63(1)(b), Stats., should be construed to provide a person's breath test result must be converted to a corresponding blood alcohol concentration because it is only alcohol in the blood which results in intoxication.

In *Walstad,* however, this court declared only that blood is a transporter of alcohol to the brain. *Walstad,* 119 Wis. 2d at 494. It is alcohol in the brain, not the blood, which actually causes intoxication. Alcohol in the blood, like alcohol in the breath, is merely an indicator of alcohol in the brain. *See also Brayman,* 751 P.2d at 298. Although blood alcohol is one indicator of alcohol in the brain, the record amply demonstrates that breath alcohol is an accurate and reliable indicator as well.

Pangman additionally argues that to construe sec. 346.63(1)(b), Stats., as setting forth a per se breath violation would render meaningless the statutory right to an alternative blood or urine test pursuant to sec.

343.305(5). Pangman asserts his partition ratio calculated blood alcohol concentration is no different than an alternative test result, and should be just as admissible.

We find construing sec. 346.63(1)(b), Stats., as setting forth a per se breath violation, the statutory right to a second test, and the exclusion of partition ratio evidence entirely consistent. The purpose of the statutorily provided second test is to afford "the opportunity to scrutinize and verify or impeach the results of the breathalyzer test administered by enforcement authorities." *Walstad,* 119 Wis. 2d at 527. Construing sec. 346.63(1)(b) would in no way affect the admissibility of an alternative test result for that purpose. That type of attack cannot, however, be made on the basis of a blood alcohol concentration calculated by means of a partition ratio.

Pangman's case is illustrative. Pangman did not request an alternative blood or urine test. Had Pangman submitted to an alternative test, the accuracy and reliability of the breath test administered to Pangman by the police might have been called into question. For example, if Pangman had requested an alternative blood test which indicated an alcohol concentration of only 0.02 percent, that result, materially different from Pangman's breath test result of 0.11 grams, would have raised the question of the accuracy and reliability of Pangman's breath test. That is precisely the type of attack to which sec. 885.235(4), Stats, speaks, and the alternative blood test result would have been admissible for that purpose. Unlike an alternative blood test result, however, Pangman's partition ratio calculated blood alcohol concentration necessarily presumes the accuracy and reliability of his breath test. Pangman's computes his corresponding blood alcohol concentration by multiplying his

breath test result times his particular partition ratio. But once derived, his partition ratio calculated blood alcohol concentration cannot be used to challenge the accuracy and reliability of the very breath test result upon which it is based.

Pangman further argues the partition ratio evidence is no different than the types of evidence admitted in *State v. Vick,* 104 Wis. 2d 678, 312 N.W.2d 489 (1981), and *State v. Hinz,* above. To exclude the partition ratio evidence, Pangman asserts, would render those decisions meaningless.

In both *Vick* and *Hinz,* charges were brought against the defendants based upon their breath test results. In *Vick,* the defendant was charged with operating a motor vehicle while under the influence of an intoxicant, contrary to sec. 346.63(1), Stats. Expert testimony was admitted at trial challenging whether there had been a sufficient period of time for the alcohol the defendant had consumed to be absorbed into his bloodstream so as to cause impairment. *Vick,* 104 Wis. 2d at 683–85. In *Hinz,* the defendant was charged with operating a motor vehicle with a blood alcohol concentration of 0.1 percent or more. A blood alcohol conversion chart issued by the Department of Motor Vehicles, which estimated a person's blood alcohol concentration on the basis of the person's weight, the number of "drinks" the person had consumed, and the time over which they had been consumed, showed a significantly different result than the defendant's breath test result and was determined admissible to challenge the accuracy and reliability of the defendant's breath test. *Hinz,* 121 Wis. 2d at 288.

There is no basis for Pangman's argument, however, because the very types of evidence introduced in *Vick* and *Hinz* were admitted into evidence at Pangman's

127

trial and employed in his defense. Unlike the partition ratio evidence, the types of evidence introduced in those decisions do not presume the accuracy and reliability of the breath test.

Pangman additionally argues the partition ratio evidence is relevant to rebut the statutory presumption set forth in sec. 885.235(1)(c), Stats., that "0.1 grams or more of alcohol in 210 liters of the person's breath is prima facie evidence that he or she was under the influence of an intoxicant."

There is no basis for Pangman's argument, however, because the jury was not instructed as to the presumption at Pangman's trial.

Pangman further argues that to construe sec. 346.63(1)(b), Stats., as providing a separate breath violation would mean a person could be convicted of violating both the breath and the blood provisions on the basis of the same incident. That issue is not properly before this court, however, because Pangman was charged with violating only the breath provision. *See Pension Management, Inc. v. DuRose,* 58 Wis. 2d 122, 128, 205 N.W.2d 553 (1973).

## II. CONSTITUTIONALITY OF SEC. 346.63(1)(b), STATS.

McManus and Pangman challenge the constitutionality of sec. 346.63(1)(b), Stats., on several grounds. Defendants both contend the breath provision violates the due process and equal protection clauses of the United States and Wisconsin Constitutions. Pangman additionally contends that the Wisconsin Department of Transportation has unconstitutionally usurped legislative authority by implicitly defining the term "breath"

in sec. 346.63(1)(b) and that the breath provision is unconstitutionally vague as applied.

The constitutionality of a statute is a question of law which this court may review without deference to the lower court. *State ex rel. Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 88 (1987). Legislative enactments are presumed constitutional, and this court has stated it "will sustain a statute against attack if there is any reasonable basis for the exercise of legislative power." *State v. Muehlenberg,* 118 Wis. 2d 502, 506-07, 347 N.W.2d 914 (Ct. App. 1984). The party bringing the challenge must show the statute to be unconstitutional beyond a reasonable doubt. *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 187, 290 N.W.2d 276, 283 (1980). "Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality." *State ex rel. Hammermill Paper Co. v. La Plante,* 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973). "The court cannot reweigh the facts found by the legislature. If the court can conceive any facts on which the legislation could reasonably be based, it must hold the legislation constitutional." *State ex rel. Strykowski v. Wilkie,* 81 Wis. 2d 491, 506, 261 N.W.2d 434 (1978).

### A. Due Process and Equal Protection.

The due process and equal protection clauses of the United States Constitution provide:

> No state shall . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

129

Amendment XIV, Section 1, United States Constitution.

The due process and equal protection clauses of the Wisconsin Constitution provide:

> All people are born equally free and independent, and have certain inherent rights; among these are life, liberty, and the pursuit of happiness . . ..

Article I, Section 1, Wisconsin Constitution.

This court has held the due process and equal protection clauses of the Wisconsin Constitution are the substantial equivalents of their respective clauses in the federal constitution. *State ex rel. Cresci v. Schmidt, Secretary of the Department of Health & Social Services,* 62 Wis. 2d 400, 414, 215 N.W.2d 361 (1974).

Due process requires that the means chosen by the legislature bear a reasonable and rational relationship to the purpose or object of the enactment; if it does, and the legislative purpose is a proper one, the exercise of the police power is valid. *State v. Jackman,* 60 Wis. 2d 700, 705, 211 N.W.2d 480 (1973). "The police power of the state is the inherent power of the government to promote the general welfare. It covers all matters having a reasonable relation to the protection of the public health, safety or welfare." *State v. Interstate Blood Bank, Inc.,* 65 Wis. 2d 482, 490, 222 N.W.2d 912 (1974) (Citations omitted).

Equal protection similarly requires that there exist a reasonable and practical grounds for the classifications drawn by the legislature. *State v. Menard, Inc.,* 121 Wis. 2d 199, 203, 358 N.W.2d 813 (Ct. App. 1984). The breath provision of sec. 346.63(1)(b) sets forth two classes:

those below the prohibited breath alcohol concentration, and those at or above it. Equal protection does not deny a state the power to treat persons within its jurisdiction differently; rather, the state retains broad discretion to create classifications so long as the classifications have a reasonable basis. *Graham v. Richardson,* 403 U.S. 365, 371 (1971). The fact a statutory classification results in some inequity, however, does not provide sufficient grounds for invalidating a legislative enactment. *Lalli v. Lalli,* 439 U.S. 259, 273 (1978). Where, as here, a suspect classification is not alleged, the legislative enactment "must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." *Frontiero v. Richardson,* 411 U.S. 677, 683 (1973). "If the classification is reasonable and practical in relation to the objective, that is sufficient and doubts must be resolved in favor of the reasonableness of the classification." *Jackman,* 60 Wis. 2d at 705–06.

The purpose of sec. 346.63(1)(b), Stats., is to encourage the prosecution of alcohol-impaired drivers. Section 967.055(1)(a). The ability to prove intoxication by means of a prohibited breath as well as blood alcohol concentration furthers that purpose. *See State v. Nordness,* 128 Wis. 2d 15, 27 n. 5, 381 N.W.2d 300 (1986). The removal of alcohol-impaired drivers is further facilitated by sec. 346.63(1)(b) because under the statute, proof of actual impairment is unnecessary. *See Muehlenberg,* 118 Wis. 2d at 505.

Defendants argue sec. 346.63(1)(b), Stats., violates due process because the statute prohibits driving or operating a motor vehicle with the specified breath alcohol concentration even though it is alcohol in the blood, not the breath, which causes impairment. The breath provision alone is an inadequate indicator of alcohol impairment, Defendants assert, because with respect to

a person with a partition ratio of less than 2,100:1, the breath test overestimates the person's corresponding blood alcohol concentration. Defendants additionally argue that breath tests are inherently unreliable because a person's breath test result may vary from breath to breath.

Defendants argue sec. 346.63(1)(b), Stats., violates equal protection because a person with a partition ratio of less than 2,100:1 could be convicted of violating the breath provision even though the person's corresponding blood alcohol concentration was below the legal limit of 0.1 percent.

We conclude the breath provision of sec. 346.63(1)(b), Stats., violates neither due process nor equal protection. It is evident from the breath provision that the legislature has determined the operation of a motor vehicle by a person with a breath alcohol concentration of 0.1 grams or more endangers public safety. *See Muehlenberg,* 118 Wis. 2d at 505. The records here provide ample evidence to support the legislature's determination that the specified breath alcohol concentration is an accurate and reliable indicator of alcohol impairment. At McManus' trial, the State's expert, Patrick Harding, a chemist with the State Laboratory of Hygiene, testified that a breath alcohol concentration of .08 grams of alcohol per 210 liters has been found, with years of research by scientists to be the level at and above which everyone is impaired with respect to operating a motor vehicle. Harding further testified that based upon his experience and training, the Intoxilyzer 5000 accurately measures a person's breath alcohol concentration and that it was an accepted breath testing device in the scientific community. At Pangman's trial, the State's expert, Dr. Patricia Field, chief of the State Laboratory

of Hygiene, testified extensively regarding the level of impairment caused by a breath alcohol concentration of 0.1 grams or more per 210 liters of breath. Dr. Field testified that such a breath alcohol concentration would significantly impair a person's vision, judgment, coordination, response time, and information processing rate.

As discussed above, the argument that it is only alcohol in the blood which results in impairment misconstrues this court's statement in *Walstad*. In *Brayman*, similar due process and equal protection challenges based upon the argument that it is only alcohol in the blood, not the breath, which causes impairment were likewise denied. *Brayman*, 751 P.2d at 299–303.

Defendants rely upon the decision of a Nebraska court of appeals in *State v. Burling*, 224 Neb. 725, 400 N.W.2d 872 (1987), in contending the breath standard alone is an inadequate indicator of alcohol impairment. Defendants' reliance upon *Burling* is misplaced, however, because central to that decision was that a breath test result was by statute relevant only for purposes of showing the person's corresponding blood alcohol concentration. *See id.* at 875. In *Burling*, the defendant introduced uncontroverted evidence that a person's partition ratio may vary from 1,100:1 to 3,400:1. *Id.* at 876. The court of appeals, bound by a higher state court decision which held that a test result subject to a margin of error had to be adjusted so as to give the person tested the benefit of that margin, determined that the defendant's breath test result could only be used to establish his corresponding blood alcohol concentration by utilizing a partition ratio of 1,100:1. *Id.* at 876–77. There is no requirement in sec. 346.63(1)(b), Stats., that a correlation between breath and blood alcohol concentrations exist.

## B. Usurpation of Legislative Authority.

Pangman further contends the Wisconsin Department of Transportation ("DOT") has unconstitutionally usurped legislative authority by implicitly defining the term "breath" in sec. 346.63(1)(b), Stats., as the "last 81 ml. of deep lung alveolar air."

Pangman argues the legislature's grant of authority to the DOT in sec. 343.305(6)(b), Stats., which allows the DOT to "approve techniques or methods of performing chemical analysis of the breath," does not include the authority to alter the meaning of the term "breath" in sec. 346.63(1)(b). Pangman relies upon *State Department of Health & Rehabilitative Services v. McTigue,* 387 So. 2d 454 (Fla. App. 1980), to support his argument. In *McTigue,* a Florida court of appeals considered a state statute which required that to be certified, a midwife must attend a certain number of births under the supervision of a licensed physician and must obtain a written statement from the physician concerning attendance. The state agency implementing the statute included in its regulations the additional requirement that the supervising physician be licensed in Florida. The McTigue court held the state agency had usurped legislative authority by changing the plain and ordinary meaning of the term "physician" which, as used in the statute, meant a physician licensed under the laws of any state. *McTigue,* 387 So. 2d at 455-56.

 We find no merit in Pangman's claim. Unlike *McTigue,* here the DOT has not enacted a regulation which expressly defines a statutory term. By approving of the Intoxilyzer 5000 as a means of measuring breath alcohol concentration, *see* Wis. Admin. Code Sec. Trans. 311.04, the DOT has merely acted in accordance with the authority granted to it by the legislature pursuant to

sec. 343.305(6)(b), Stats. *See State v. Dwinell,* 119 Wis. 2d 305, 309-10, 349 N.W.2d 739 (Ct. App. 1984).

## C. Void for Vagueness.

Pangman additionally contends sec. 346.63(1)(b), Stats., is unconstitutionally vague as applied because of the highly technical definition given the term "breath" by the DOT.

This court has applied a two part analysis for determining whether a statute is void for vagueness: first, the statute must be sufficiently definite to give persons of ordinary intelligence who seek to avoid its penalties fair notice of the conduct required or prohibited; and second, the statute must provide standards for those who enforce the laws and adjudicate guilt. *See City of Oak Creek v. King,* 148 Wis. 2d 532, 546, 436 N.W.2d 285 (1989).

Pangman argues that by approving of the Intoxilyzer 5000 as a means of testing breath alcohol concentration, the DOT has altered the otherwise unambiguous meaning of the term "breath." Relying upon *State v. Popanz,* 112 Wis. 2d 166, 332 N.W.2d 750 (1983), Pangman asserts the term "breath" in sec. 346.63(1)(b), Stats., fails the first part of the void for vagueness test because no ordinary person could reasonably anticipate that what the statute prohibits is having more than a certain amount of alcohol in the last 81 ml. of exhaled deep lung air. In *Popanz,* this court held a statute containing the phrase "private school" was unconstitutionally vague because the phrase was not defined by the relevant statutes or administrative regulations, nor did the phrase have a commonly understood meaning. *Id.* at 174.

We are not persuaded by Pangman's argument. Unlike the phrase "private school," the term "breath" has a commonly understood meaning. By approving of the Intoxilyzer 5000, the DOT has merely acted pursuant to its authority in sec. 343.305(6)(b), Stats.

As the *Muehlenberg* court did with respect to the blood provision, we take judicial notice of the fact that it takes more than the consumption of a small amount of alcohol to accumulate a breath alcohol concentration of 0.1 grams or more of alcohol in 210 liters of breath. *See Muehlenberg*, 118 Wis. 2d at 508. A person with common intelligence will know that when consumption is approaching a meaningful amount, he or she will be in jeopardy of violating the breath provision. *See id.* at 508–09; *see also Brayman*, 751 P.2d at 301.

Pangman does not argue sec. 346.63(1)(b), Stats., violates the second part of the void for vagueness test. As to that part, *Muehlenberg* is dispositive. The *Muehlenberg* court concluded the blood provision of sec. 346.63(1)(b) could not be more precise as a standard of law enforcement because it leaves no discretion to enforcement authorities. *Muehlenberg*, 118 Wis. 2d at 507. That same reasoning is applicable here with respect to the breath provision.

## III. REMAINING EVIDENTIARY OBJECTIONS.

Pangman challenges several other evidentiary rulings made by the circuit court. As noted above, the decision to admit or exclude evidence will only be overturned on appeal where the circuit court has abused its discretion. *Hinz*, 121 Wis. 2d at 285. "To find an abuse of discretion an appellate court must find either that dis-

cretion was not exercised or that there was no reasonable basis for the trial court's decision." *Wisconsin Public Service Corp.,* 104 Wis. 2d at 395.

### A. Admissibility of Breath Test Results.

Pangman contends the circuit court abused its discretion by admitting into evidence without a reasonable basis the result of Pangman's Intoxilyzer 5000 breath test.

Breath test results in Wisconsin are entitled to a *prima facie* presumption of accuracy where, as here, the breath test was administered within three hours of the event to be proved. Section 885.235(1)(c), Stats.; *see also State v. Disch,* 119 Wis. 2d 461, 472-77, 351 N.W.2d 492 (1984). A breath test result may be excluded, however, where the accuracy of the test is so questionable that its result is not probative, and therefore irrelevant, or is so questionable that its probative value is outweighed by its prejudicial effect. *City of New Berlin v. Wertz,* 105 Wis. 2d 670, 674-75, 214 N.W.2d 911 (Ct. App. 1981).

Pangman argues his breath test result is nonprobative, and therefore irrelevant, because the Intoxilyzer 5000 overestimated his blood alcohol concentration by utilizing a partition ratio greater than Pangman's.

We conclude Pangman's argument fails for two reasons, both as discussed above. First, because sec. 346.63(1)(b), Stats., sets forth a per se breath violation, there is no requirement that a direct correlation between breath and blood alcohol concentrations exist. Second, to challenge a breath test result on the basis of a blood alcohol concentration calculated by means of a partition ratio presumes the accuracy of the breath test.

Pangman further argues his breath test result is inherently prejudicial because the Intoxilyzer 5000 mis-

leads the jury into believing that a person's total exhalation is measured, when in fact only the last 81 ml. of deep lung air is analyzed.

In *Disch,* this court stated "[a]ny contentions that the test result is unreliable or inaccurate goes only to the weight of the evidence as a matter of defense, not to its admissibility." *Disch,* 119 Wis. 2d at 476. While in *Disch* we quoted with approval the exceptions set forth in *Wertz,* we are not persuaded by Pangman's argument that the Intoxilyzer 5000 is so inaccurate or unreliable as to fall within the scope of the *Wertz* exceptions. We note that the fact the Intoxilyzer 5000 measures only the last 81 ml. of a person's exhalation is one of the primary bases of the breath testing device's reliability. Breath testing devices have been criticized as inadequate indicators of alcohol impairment because their results may overestimate breath alcohol concentration by measuring alcohol in the mouth. For example, a breath test given to a person immediately after he or she uses a mouth rinse containing alcohol could indicate a significant breath alcohol concentration even though no alcohol had been ingested. As Dr. Field testified, however, the Intoxilyzer 5000 is designed to test only deep lung air so that it does not measure mouth alcohol. The amount of alcohol in a person's deep lung air, Dr. Field testified, is representative of the amount of alcohol in the person's entire body.

The circuit court's admission of Pangman's breath test result was proper pursuant to sec. 885.235(1)(c), Stats. In accord with *Disch,* Pangman's argument that the Intoxilyzer 5000 is inaccurate and unreliable because it measures only the last 81 ml. of a person's exhalation was heard by the jury at trial.

138

## B. Admissibility of Evidence Relating to the Degree of Impairment Caused by a Breath Alcohol Concentration of 0.1 Grams or More of Alcohol in 210 Liters of Breath.

Pangman finally contends the circuit court abused its discretion by admitting into evidence without a reasonable basis Dr. Field's testimony as to the degree of impairment caused by a breath alcohol concentration of 0.1 grams of alcohol or more in 210 liters of breath. It is alcohol in the blood which results in impairment, Pangman again asserts, not alcohol in the breath.

We find no merit in Pangman's contention. Pangman relies again upon *Walstad,* but as discussed above, blood alcohol is merely an indicator of brain alcohol and the record amply indicates that breath alcohol is an accurate and reliable indicator as well. The evidence relating Pangman's breath test result to impairment was relevant for several purposes. Dr. Field's testimony supported the accuracy and reliability of the breath test result. As noted above, Dr. Field testified that a person's degree of alcohol impairment could be based upon a breath test result alone. Dr. Field further stated that breath alcohol is an accurate measure of impairment because the breath alcohol is related to the alcohol in the rest of the body including the blood in the brain. The Intoxilyzer 5000 is a reliable indicator of alcohol impairment, Dr. Field continued, because it does not normally give a reading for alcohol which was not deep in the lungs and therefore in the whole body. In addition, Dr. Field's testimony corroborated the opinion of the Wisconsin state patrol officer who arrested Pangman that Pangman was under the influence of an intoxicant. The officer testified he observed Pangman driving erratically

on an interstate highway. The officer stopped Pangman's vehicle. While explaining to Pangman why he had been stopped, the officer noted an odor of alcohol on Pangman's breath. The officer further observed that Pangman's eyes were red and glassy. The officer asked Pangman to recite the alphabet. Pangman was unable to do so until singing the alphabet on the fifth attempt. The officer then asked Pangman to perform two field sobriety tests. The officer observed that Pangman was unable to perform either test. Dr. Field's testimony established that the actions observed by the officer were consistent with the nature of impairment caused by a breath alcohol concentration of 0.1 grams or more of alcohol in 210 liters of breath.

*By the Court.*—The judgments of conviction of the circuit courts in *State v. McManus* and *State v. Pangman* are affirmed.