COMMUNITY NEWSPAPERS, INC., and Elsa R. Schupmehl, Plaintiffs-Respondents,

v.

The CITY OF WEST ALLIS, Defendant,

and J.J. BLONIEN & ASSOCIATES, INC., also d/b/a The West Allis Enterprise, Defendant-Appellant.†

Court of Appeals

*No. 89–0998. Submitted on briefs February 7, 1990.—Decided April 17, 1990.*

(Also reported in 456 N.W.2d 646.)

†Petition to review denied.

For the defendant-appellant J.J. Blonien & Associates, Inc., the cause was submitted on the briefs of *Margaret Baumgartner* and *Howard Goldberg* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.,* of Madison.

For the plaintiffs-respondents Community Newspapers, Inc. and Elsa R. Schupmehl the cause was submitted on the briefs of *Carolyn Gnaedinger* of *Quarles & Brady,* of Milwaukee, and *Richard C. Gad* of *Richard C. Gad, S.C.,* of Milwaukee.

Before Moser, P.J., Sullivan and Fine, JJ.

SULLIVAN, J. J.J. Blonien & Associates, d/b/a *The West Allis Enterprise,* appeals from a partial summary judgment declaring a contract for the publication of legal notices void and enjoining the City of West Allis from spending public funds to publish legal notices in the *Enterprise.* Because we conclude that the *Enterprise* failed to qualify for the publication of legal notices under

sec. 985.03(1)(a), Stats., and because we conclude that the trial court's interpretation of that statute does not deny a segment of the electorate its right of equal protection, we affirm the order of the trial court.[1]

In April of 1988, Blonien and Community Newspapers, Inc. (CNI), publisher of the *West Allis Star,* submitted bids on a contract to publish legal notices for the City of West Allis. Blonien submitted a bid to publish the notices in the *Enterprise* for $4.95/column inch. CNI's bid for publication in the *Star* was at $5.50/column inch. The City awarded a one-year contract to Blonien.

CNI filed this action against Blonien and the City seeking declaratory and injunctive relief. On CNI's motion for summary judgment, the trial court concluded that under the terms of sec. 985.03, Stats., the *Enterprise* did not qualify for the publication of legal notices. That section provides:

**985.03 Qualification of newspapers. (1)** (a) No publisher of any newspaper in this state shall be awarded or be entitled to any compensation or fee for the publishing of any legal notice unless, for at least 2 years immediately before the date of the notice publication, the newspaper has been published regularly and continuously in the city, village or town where published, and has had a bona fide paid circulation:

1. That has constituted 50% or more of its circulation; and,

---

[1]On January 29, 1990, the City of West Allis made a motion to consolidate Case No. 90-0202 with this pending appeal. In support of its motion, the City argues that the issues in the cases are identical. However, several issues in the appeals are not identical. Because determination of the pending appeal may resolve common issues, the City's motion is denied.

2. That has had actual subscribers at each publication of not less than 1,000 copies in 1st and 2nd class cities, or 300 copies if in 3rd and 4th class cities, villages or towns.

The trial court concluded that the *Enterprise* was not qualified to carry legal notices because its "paid circulation" did not constitute 50% or more of its circulation. The court granted summary judgment in favor of CNI and declared the contract between Blonien and the City void.

■■■■

Our review of an order granting summary judgment involves the same standards used by the trial court in its determination of the summary judgment motion. *Juneau Square Corp. v. First Wisconsin Nat'l Bank of Milwaukee,* 122 Wis. 2d 673, 681, 364 N.W.2d 164, 168 (Ct. App. 1985). When the pleadings, depositions, affidavits and other papers on file show that there is no genuine issue as to any material fact, the movant is entitled to judgment as a matter of law. Sec. 802.08(2), Stats. The motion is particularly appropriate when the determination of a legal issue or issues concludes the action. *Johansen v. Reinemann,* 120 Wis. 2d 100, 101, 352 N.W.2d 677, 678 (Ct. App. 1984).

Blonien contends that the *Enterprise* qualifies for the publication of legal notices under sec. 985.03. The thread of his argument ties sec. 985.02(1), Stats., which requires publication of a legal notice in a newspaper likely to give notice with the terms "bona fide paid circulation" and "subscribers" appearing in sec. 985.03(1)(a).[2]

---

[2]*See* sec. 985.02(1), Stats. ("Except as otherwise provided by law, a legal notice shall be published in a newspaper likely to give notice in the area or to the person affected.")

Blonien argues that paid circulation means payment from any source, including advertisers.

Each week, 25,000 copies of the *Enterprise* are delivered to the homes of West Allis residents. The cost of circulation is paid entirely by advertisers. There is no charge to the recipient. Blonien insists that under the terms of the statute payment from any source, readers, recipients, donors, friends, relatives, associates and institutions, as well as advertisers, constitutes a "paid circulation." He argues that contracts between the *Enterprise* and its advertisers legally bind it to publish and therefore assure its continuous circulation. He also argues that a "subscriber" is anyone who agrees or consents to accept delivery of a newspaper on a regular basis. A recipient's failure to request nondelivery of the *Enterprise,* Blonien concludes, implicitly establishes his or her status as a subscriber.

The parties do not argue that sec. 985.03(1)(a) is ambiguous. In clear and easily understandable terms the statute sets forth the conditions a newspaper must meet before its publisher may lawfully contract for publication of legal notices. Application of an unambiguous statute to a given set of facts presents a legal issue which we review without deference to the trial court's conclusions. *State v. McManus,* 152 Wis. 2d 113, 122-23, 447 N.W.2d 654, 657 (1989).

We reject Blonien's analysis. It rends and tears at the fabric of sec. 985.03(1)(a). Selecting individual words, he defines them in a manner to reach his desired result. While we are aware that a particular word may have a variety of meanings, *see Lukaszewicz v. Concrete Research, Inc.,* 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969), we are bound to construe a statute in a manner

that effects its legislative purpose. *Id.* Therefore, we construe the meaning of individual words in an unambiguous statute in the context of its subject matter. *Id.* We are not free to interpret the words of an unambiguous statute to achieve a result clearly not intended by the legislature.

Section 985.03(1)(a) unambiguously requires that for publication of legal notices, a newspaper, for at least two prior years, must be published in the city and must have a bona fide paid circulation. Also, the paid circulation must consist of 50% or more of its total circulation, and subscribers in a city of the second class, such as West Allis, must number at least 1,000. *See Bartlett v. Joint County School Comm.,* 11 Wis. 2d 588, 106 N.W.2d 295 (1960).[3] We reject as inconsistent with the subject and context of sec. 985.03(1)(a) Blonien's arguments that a newspaper circulation paid for by advertising revenues constitutes a "paid circulation," and that "subscribers" includes persons who do not return papers delivered without charge to their doorstep. Recipients of the *Enterprise* are not paid subscribers and rarely pay on a single-copy basis. The City's contract with Blonien contravenes sec. 985.03(1)(a) and is void. *See* 71 Op. Att'y Gen. 177 (1982).

Furthermore, we conclude that Blonien's analysis renders parts of the statute superfluous. The structure of sec. 985.03 clearly indicates that the legislature intended to distinguish between a "paid circulation" and a "circulation." To qualify under the statute, a newspaper's

---

[3]In *Bartlett* the supreme court's analysis implicitly equated "paid subscribers" with the term "bona fide paid circulation to actual subscribers" that appeared in the predecessor to sec. 985.03, Stats. *See Bartlett,* 11 Wis. 2d at 593, 106 N.W.2d at 297.

356

"paid circulation" must constitute 50% or more of its "circulation." *See* sec. 985.03(1)(a)1, Stats. Blonien argues that a "paid circulation" may be paid for by any source. However, he ignores the fact that every newspaper circulation is paid for by some source, be it subscribers, advertisers, or the publisher itself. Thus, under Blonien's analysis, every circulation would be a "paid circulation." We may not interpret a statute in a manner that renders any of its parts superfluous. *Milwaukee Metro. Sewerage Dist. v. Wisconsin DNR,* 122 Wis. 2d 330, 336, 362 N.W.2d 158, 161 (Ct. App. 1984). Because Blonien's analysis renders the word "paid" in the term "paid circulation" superfluous, it destroys the legislature's distinction between a "paid circulation" and a "circulation," and obviates the effect of sec. 985.03(1)(a)1, Stats. Therefore, we are bound to reject it.

Blonien next argues that the trial court's interpretation of sec. 985.03(1)(a) violates equal protection.[4] He correctly argues that "the opportunity for equal partici-

---

[4]Amend. XIV, sec. 1, United States Constitution provides:

> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Art. I, sec. 1, Wisconsin Constitution provides:

> **Equality; inherent rights.** Section 1. All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed.

The due process and equal protection provisions of the state and federal constitutions are substantially equivalent to each other. *State v. McManus,* 152 Wis. 2d at 130, 447 N.W.2d at 660.

pation by all voters" is a *sine qua non* to a citizen's role in the affairs of government. *See Reynolds v. Sims,* 377 U.S. 533, 566 (1964). A statute which requires a citizen to obtain notice by purchase of a newspaper, Blonien argues, violates equal protection as much as a statute that requires a candidate to pay a fee to have his or her name placed on the ballot, *see Bullock v. Carter,* 405 U.S. 134 (1972), or requires a voter to pay a poll tax, *see Harper v. Virginia Bd. of Elections,* 383 U.S. 663 (1966). Blonien's argument is based on his assertion that some electors may be too poor to purchase a newspaper.

The scope and standard for our review of a constitutional attack upon a statute is restated in *State v. McManus,* 152 Wis. 2d at 129, 447 N.W.2d at 660:[5]

> The constitutionality of a statute is a question of law which this court may review without deference to the lower court. Legislative enactments are presumed constitutional, and this court has stated it will sustain a statute against attack if there is any reasonable basis for the exercise of legislative power. The party bringing the challenge must show the statute to be unconstitutional beyond a reasonable doubt. Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality. The court cannot reweigh the facts found by the legislature. If the court can conceive any facts on which the legislation

---

[5]Blonien does not expressly challenge the constitutionality of sec. 985.03(1)(a), Stats. He argues that the trial court's *interpretation* of the statute gives rise to an unconstitutional effect. Because we hold that the trial court's interpretation of the statute is correct and gives effect to the intent of the legislature, we will review this issue from the standpoint that Blonien has challenged the constitutionality of the statute itself.

could reasonably be based, it must hold the legislation constitutional. [Citations omitted.]

*See also State ex rel. Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 883, 892 (1987).

Blonien argues that we should employ the "strict scrutiny" test to determine whether a specific governmental objective is involved in the publication restriction and whether the statute achieves that objective. However, he cites no authority to establish the right of *each* elector to individual notice of an election. His case authority pertains to statutes which directly bar exercise of a right. We reject Blonien's argument for two reasons. First, no elector's right to vote is contingent upon status of race, alienage, national origin or wealth. *See Moedern v. McGinnis,* 70 Wis. 2d 1056, 1072, 236 N.W.2d 240, 248 (1975). Second, the statutes sufficiently provide for notice to be given "in the area," *see* sec. 985.02(1), Stats., or "in an area," *see* sec. 985.01(2)(a).[6] Blonien presents no valid reason why sec. 985.03(1)(a) should be held up to the litmus of strict scrutiny. In no way does it prohibit a particular class from exercising its right to vote. *See McDonald v. Board of Election Comm'rs of Chicago,* 394 U.S. 802, 807–08 (1969).[7]

Because there is no suspect class, we confine our inquiry to whether the legislative purpose embodied in sec. 985.03(1)(a) is irrational or arbitrary. *See Gerhardstein,* 141 Wis. at 733, 416 N.W.2d at 892. If a reasona-

[6]Blonien's concession that a constructive notice of election would fulfill constitutional requirements accords with the mandate of sec. 985.02(1), Stats., that notice be directed to the area.

[7]We also note that the Supreme Court has never held that wealth discrimination alone provides a basis for application of the strict scrutiny test. *See San Antonio Indep. School District v. Rodriguez,* 411 U.S. 1, 29 (1973).

ble basis for the limit or classification exists, there is no equal protection violation. *Id.*

We conclude that the statutory scheme involving sec. 985.03 is based on a logical classification. If a newspaper is used as a method of publication, it must be likely to give notice in the area or to the persons affected. However, to qualify for compensation, publishers of newspapers must meet the paid circulation requirements. In this respect, the legislature could consider the common experience of life that a person who pays for a newspaper is more likely to read it, *see In re Avila,* 501 A.2d 1018, 1019 (N.J. Super. Ct. App. Div. 1985), and that a paid-for newspaper contains news of general interest.

In assessing the type of notice of election which should be given to electors, the legislature was aware of the constantly changing composition of the electorate; i.e., electors moving in and out of the district, electors dying or suffering incapacity to vote. Personal notice of election to each elector is virtually impossible. The legislature was also aware of the fact that public libraries invariably display the latest edition of local newspapers which any elector can peruse free of charge. Thus, the legislative distinction between paid and unpaid circulation in sec. 985.03 has a rational basis. Blonien has not proved that the notices published under its terms are unlikely to give notice in the area or to the person affected. Because its conditions for the publication of legal notices are neither arbitrary nor irrational, we affirm the decision of the trial court.

*By the Court.*—Order affirmed.